188

UNITED STATES, Appellee,

v.

**Timothy Luiz COLLINS, Mess Management Specialist Second Class United States Navy, Appellant.**

No. 36,668.

NCM 78 0759.

U. S. Court of Military Appeals.

July 23, 1979.

For Appellant—Lieutenant Steven A. Curlee, JAGC, USNR (argued); Captain G. M. Potter, USMC (on brief).

For Appellee—Major D. A. Higley, USMC (argued); Commander T. C. Watson, Jr., JAGC, USN (on brief).

Opinion of the Court

COOK, Judge:

■ By certificate, the Judge Advocate General of the United States Navy,[1] asks "[w]hether the U. S. Navy Court of Military Review was correct" in determining that conduct contrary to 21 U.S.C. § 841, which assertedly lacks extraterritorial application, was nonetheless punishable by courts-martial as a violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, because it took place aboard a naval vessel underway in the Mediterranean Sea. We answer the certified question in the affirmative.

Accused was charged with wrongful possession, "on board USS JOHN F. KENNEDY (CV 67)," of a quantity of marijuana, with intent to distribute, "in violation of 21 U.S.C. § 841." The charge was lodged under Article 134 of the Uniform Code,[2] and, with others, was referred to a special court-martial. At trial, the accused moved to dismiss the charge on the ground that it did not allege a cognizable offense in that section 841 has no extraterritorial application. The parties stipulated that, on the day of the offense, the USS JOHN F. KENNEDY "was enroute from Alexandria, Egypt to Naples, Italy."

1. Article 67(b), Uniform Code of Military Justice, 10 U.S.C. § 867(b).

2. 10 U.S.C. § 934.

Defense counsel contended that section 841 makes no mention, directly or by implication, of application beyond the territory of the United States and, consequently, it cannot have extraterritorial force, even aboard a "naval vessel in international waters." In opposition, trial counsel maintained that the governing principle of law was not whether section 841 had extraterritorial effect, but that a United States naval vessel, regardless of its geographical location, was "a piece of American soil," and, as such, carried with it all the laws of the nation. The judge agreed with trial counsel. Declaring that "a United States Naval Ship of the line is always part of the soil of the United States," he denied the accused's motion to dismiss.

■ On review, the Court of Military Review affirmed the trial judge's ruling. It supported its affirmance by quoting from the opinion of the United States Supreme Court in *United States v. Rodgers*, 150 U.S. 249, 264, 14 S.Ct. 109, 115, 37 L.Ed. 1071 (1893), the declaration that "a vessel is deemed part of the territory of the country to which she belongs." We have no doubt as to the correctness of the Court of Military Review's decision. As a leading American encyclopedia of law points out, a "[v]essel of [the] United States is [an] extension of [the] territory of [the] United States." 21 Am.Jur.2d, Criminal Law, § 395 (Supp.). *See also United States v. Flores*, 289 U.S. 137, 53 S.Ct. 580, 77 L.Ed. 1086 (1933). Particularly is that true of a warship, which remains subject to the law of the country to which it belongs and exempt from the domestic law of a friendly nation, even in a port of that nation. 45 Am.Jur.2d, International Law, § 79. We are, however, impelled to consider an implication in accused's argument to the effect that this Court's opinion in *United States v. Gladue*, 4 M.J. 1 (C.M.A.1977), established that legislative intention as to the extrater-

ritorial application of a statute has primacy over the principle of the extension of a nation's territorial law to a vessel that flies its flag.

In *Gladue*, the accused was convicted of two offenses, one of which was wrongful possession of heroin "at or near" U-Tapao Air Field, Thailand. Between the commission of the offense and the charge, he had been discharged and had reenlisted. He contended that, under Article 3(a) of the Uniform Code,[3] he was "relieved from amenability to be tried by court-martial" because the offense was cognizable in a United States District Court, as a violation of 21 U.S.C. § 844, which, he asserted, had extraterritorial application. *United States v. Gladue, supra* at 4. The Court observed that "the natural and probable place of any possession offense is normally within the United States"; it concluded that section 844 was inoperative in a foreign country so no prosecution for a violation of that section would lie in a United States District Court. *Id.* at 5.

■ Nothing in this exposition of the *Gladue* opinion suggests that a domestic law that has no general extraterritorial application must also be inoperative aboard a vessel owned by the United States that is on the high seas. However, extrapolations from the place of concealment of the heroin raise the issue. In the text of the *Gladue* opinion, the Court noted that the accused was assigned to the crew of a United States military aircraft. Before its scheduled departure from Thailand, he and a co-accused "placed three canisters of heroin aboard the aircraft." *Id.* at 2. In a footnote to this factual recital, the opinion remarked that "possession of these three canisters" was the basis for the allegations that accused " 'did at or near U-Tapao Air Field, Thailand, . . . wrongfully have in his possession . . . heroin.' " *Id.* n.2. If these comments are construed to mean that

---

**3.** Article 3(a), UCMJ, 10 U.S.C. § 803(a), provides as follows:

Subject to section 843 of this title (article 43), no person charged with having committed, while in a status in which he was subject to this chapter, an offense against this chapter, punishable by confinement for five years

or more and for which the person cannot be tried in the courts of the United States or of a State, a Territory, or the District of Columbia, may be relieved from amenability to trial by court-martial by reason of the termination of that status.

the accused possessed the heroin aboard the military aircraft, then, arguably, the offense was triable in a United States District Court because a military aircraft of the United States, like a military vessel of the United States, should be deemed "an extension of the territory" of the nation in which the entire body of the United States law is operative.[4] The *Gladue* opinion, however, stressed the allegation that the offense was committed in territory subject to the sovereignty of Thailand and not that of the United States. The specification states that the act of possession occurred "at or near U-Tapao Air Field," [5] and the government's evidence focused not on constructive possession of the heroin concealed in the aircraft, but on accused's actual physical control over the drug during the period preceding its concealment. *Gladue*, therefore, casts no doubt on the settled rule that domestic law is in force aboard a naval vessel of the United States on the high seas.

The decision of the United States Navy Court of Military Review is affirmed.

Judge PERRY concurs.

UNCLASSIFIED

P R 121200Z SEP 68
FM AMEMBASSY BANGKOK
TO SECSTATE WASHDC
INFO CINCPAC

4. We express no opinion on the merits of the argument. The aircraft in *United States v. Gladue*, 4 M.J. 1 (C.M.A.1977), was a KC–135(B–707), which is a very large plane. An aircraft of that kind might well be comparable to a naval vessel, but too expansive a view of the matter might require inclusion of such military land vehicles as a personnel carrier or a tank. The statutory definition of the special maritime and territorial jurisdiction of the United States extends to vessels and "[a]ny aircraft belonging in whole or part to the United States . . . *while such aircraft is in flight*." 18 U.S.C. § 7(5) (emphasis added). In its brief, the Government maintains, and we agree, that "this case presents no impact upon international law or international relations between the United States and a foreign sovereign."

5. While United States military aircraft used the U-Tapao Royal Thai Air Field, and a portion of it was apparently set aside for the needs of American Forces for the limited purposes for

UNCLAS BANGKOK
SUBJ: THANAT NEWS CONFERENCE—SOFA

Foreign Minister Thanat was asked about the SOFA negotiations at his news conference this morning. He replied: "Negotiations are being held, but I do not know when they will be finished. . . . It is . . . necessary to pay thorough consideration to all angles because we must safeguard the interests of our nation and our country and of all the Thai people. . . In addition, there is the right to use military bases, which we consider are the rightful property of Thailand and under Thai sovereignty, and under Thai law."

UNCLASSIFIED

FLETCHER, Chief Judge (concurring in the result):

Relying solely on the statements and rationale supportive thereof in *United States v. Flores*, 289 U.S. 137, 53 S.Ct. 580, 77 L.Ed. 1086 (1933); *St. Clair v. United States*, 154 U.S. 134, 14 S.Ct. 1002, 38 L.Ed. 936 (1894); *United States v. Rodgers*, 150 U.S. 249, 14 S.Ct. 109, 37 L.Ed. 1071 (1893); *Wilson v. McNamee*, 102 U.S. (12 Otto) 572, 26 L.Ed. 234 (1880); *Crapo v. Kelly*, 83 U.S. (16 Wall.) 610, 21 L.Ed. 430 (1873); and *The Scotia*, 81 U.S. (14 Wall.) 170, 20 L.Ed. 822 (1872), I concur in the result.

which they were in Thailand, no treaty or agreement conferred upon the United States such legal authority over the field as to transform it into an enclave functionally equivalent to a domestic enclave, in which all United States law is enforced. See *Thailand-Mutual Defense Assistance*, T.I.A.S. 2434 (Oct. 17, 1950), Vol. 3, Part 2 (1952), at 2675. In a news conference, Thailand's Foreign Minister declared, in regard to the United States' "right to use military bases" in Thailand, that his government "consider[ed]" that the bases "are the rightful property of Thailand and under Thai sovereignty." AMEMBASSY BANGKOK (Unger) Unclas Unclass msg to SECSTATE, WASH DC, of 121200Z Sep 68 (see Appendix). In its brief in *Gladue*, the Government represented that the air field was "not an American military base, but . . . in fact, a Thai base"; and the accused emphasized that the offense "involved a possession *at* U-Tapao Air Field."