PENWEST DEVELOPMENT CORPO-
RATION LIMITED, Plaintiff,

v.

The DOW CHEMICAL
COMPANY, Defendant.

No. 86–CV–10317–BC.

United States District Court,
E.D. Michigan, N.D.

May 19, 1987.

Mark E. Staib, Hahn, Loeser & Parks,
Cleveland, Ohio, Jay E. Brant, Honigman,
Miller, Schwartz & Cohn, Detroit, Mich.,
for plaintiff.

Michael H. Whiting, Stark & Reagan,
Troy, Mich., Leonard L. Rivkin, Rivkin, Ra-

dler, Dunne & Bayh, Uniondale, N.Y., for defendant.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

This is a products liability and civil RICO action brought by Penwest Development Corporation, a Canadian corporation with its principal place of business in Toronto, against Dow Chemical Company, a Delaware corporation with its principal place of business in Midland, Michigan. There is diversity as well as federal question jurisdiction under 28 U.S.C. §§ 1331 and 1332. The dispute arose out of a Dow product called Sarabond, which was used in constructing Bond Place, a hotel in Toronto. Penwest was the general contractor for the construction of Bond Place. The Sarabond product is a saran latex mortar additive used in brick masonry as a strengthening agent. Dow developed and tested Sarabond in Midland, Michigan in the early 1960's. In the early 1970's, Dow conducted testing in Midland to determine whether Sarabond contributed to corrosion of steel or the cracking of brick facades in response to complaints about the product. Penwest claims that a defect in Sarabond, of which Dow was aware, caused the alleged cracking and displacement of bricks in Bond Place.

Dow moves to dismiss this action based on the common law doctrine of forum non conveniens, arguing that this action is more appropriately tried in Canada. Magistrate Charles Binder, in a Report and Recommendation filed pursuant to 28 U.S.C. § 636(b)(1)(B), recommended a denial of defendant's motion for two alternative reasons: 1) forum non conveniens does not apply to RICO actions because of the special venue provision; or 2) defendant failed to establish that Canada is a more appropriate and convenient forum. Defendant filed timely objections to the Magistrate's Report and Recommendation, and the Court considers the entire matter *de novo*.

### A. Forum Non Conveniens and Special Venue Provisions

The Magistrate agreed with Penwest's argument that the common law doctrine of forum non conveniens is inapplicable to actions under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68, because it would contravene congressional intent to give RICO plaintiffs broad venue choices. 18 U.S.C. § 1965(a) provides:

> Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

This section was modeled after the venue provisions in the antitrust laws.

In *United States v. National City Lines*, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948) ("*National I*"), the Supreme Court held that the doctrine of forum non conveniens does not apply to suits brought under the United States antitrust laws because to do so would thwart Congress' intent to facilitate enforcement of these laws by giving plaintiffs a wide range of possible venues. The Court stated:

> In the face of this history we cannot say that room was left for judicial discretion to apply the doctrine of forum non conveniens so as to deprive the plaintiff of the choice given by the [special venue provision].

334 U.S. at 588, 68 S.Ct. 1169, 92 L.Ed. at 1593. In *National I*, the suit was brought in California, and Illinois was asserted to be the more convenient forum.

After *National I* was decided, Congress enacted 28 U.S.C. § 1404(a) which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought.

In *United States v. National City Lines*, 337 U.S. 78, 69 S.Ct. 955, 93 L.Ed. 1226 (1949) ("*National II*"), the Supreme Court, relying on the companion case of *Ex parte Collett*, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949), held that section 1404 permits the transfer of an antitrust action to a

more appropriate forum, notwithstanding the Clayton Act's special venue provision. In *Collett,* the Court was unwilling to find that section 1404 repealed such a provision, stating that a special venue provision "defines the proper forum" whereas section 1404(a) "deals with the right to transfer an action properly brought." 337 U.S. at 60, 69 S.Ct. 944, 93 L.Ed. at 1211. Even though section 1404 and the common law doctrine of forum non conveniens are facially similar, section 1404 is not a mere codification of the common law. Its purpose " 'was to grant broadly the power of transfer for the convenience of parties and witnesses, in the interest of justice, whether dismissal under the doctrine of forum non conveniens would have been appropriate or not.' " *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789, 793 (1954). Although the considerations in determining whether to transfer a case under 1404 may be the same as those in deciding whether to dismiss a case under the common law doctrine, the district court has broader discretion under 1404. *Id.* Thus the common law doctrine is not identical to section 1404, and survives the enactment of that law. *Liamuiga Tours v. Travel Impressions, Ltd.,* 617 F.Supp. 920, 929 (E.D.N.Y.1985). However, the common law doctrine has been largely superseded by section 1404 and now only applies where the alternative forum is a state court or the court of a foreign country. C. Wright, The Law of Federal Courts 259–60 (4th ed. 1983).

The question then is what is left of *National I* after the passage of 1404 and after *National II* and *Collett?* The Magistrate and Penwest believe that the reasoning of *National I* as it relates to the common law doctrine of forum non conveniens is still good law. The Sixth Circuit has not addressed this question, and the Fifth and Second Circuit Courts of Appeals are split on the issue. In *Industrial Investment Development Corp. v. Mitsui,* 671 F.2d 876

(5th Cir.1982), *vacated and remanded on other grounds,* 460 U.S. 1007, 103 S.Ct. 1244, 75 L.Ed. 475 (1983), the Fifth Circuit held that the "common law doctrine of forum non conveniens is inapplicable to suits brought under the United States antitrust laws", relying on *National I.* 671 F.2d at 890. In contrast, the Second Circuit recently held that forum non conveniens applies to RICO cases, notwithstanding RICO's special venue provision and notwithstanding *National I. Transunion Corp. v. Pepsico,* 811 F.2d 127 (2nd Cir.1987).

■ It is the opinion of the Court that the reasoning of *National I* was superseded by 28 U.S.C. § 1404(a). As the court in *Pepsico* points out, *National I* was based on an interpretation of the Clayton Act's legislative history which disclosed " 'no other thought than that the choice of forums was given as a matter of right, not as one limited by judicial discretion.' " 811 F.2d at 130 (quoting *National I,* 334 U.S. at 586– 87, 68 S.Ct. at 1176). Congress subsequently negated this assertion by expressly allowing the deprivation of this "right" through the exercise of broader discretion than that allowed under the common law. Accordingly, the Court will apply the common law doctrine of forum non conveniens in determining whether this suit should be dismissed.

### B. Forum Non Conveniens

■ A prerequisite to the application of forum non conveniens [1] is the existence of an adequate alternative forum. *Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055, 1061 (1947). An adequate alternative forum "presupposes at least two forums in which the defendant is amenable to process." *Id.* In this case, Dow has stipulated that it will accept Canadian jurisdiction and service of process. Courts have recognized a defendant's right to accept a foreign country's jurisdiction for purposes of forum non conveniens. *See Watson v. Merrell Dow*

---

**1.** It is the opinion of the Court that the doctrine of forum non conveniens under Michigan law is virtually identical to the federal common law doctrine. *See Cray v. General Motors Corp.,* 389 Mich. 382, 207 N.W.2d 393 (1973). Therefore,

the Court does not reach the issue of whether state or federal law of forum non conveniens applies under *Erie,* since the result would not differ. *Cf. Piper,* 454 U.S. at 248 n. 13, 102 S.Ct. 262 n. 13.

*Pharmaceuticals, Inc.*, 769 F.2d 354, 356 (6th Cir.1985). The standard for determining the adequacy of the alternative forum is whether it is so clearly inadequate that it would provide "no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, 102 S.Ct. 252, 265, 70 L.Ed.2d 419, 435 (1981).

■■■ Several courts have found Canada to be an adequate alternative forum, and rightly so. *Ledingham v. Parke-Davis Div. of Warner-Lambert Co.*, 628 F.Supp. 1447, 1450 (E.D.N.Y.1986); *see Miskow v. Boeing Co.*, 664 F.2d 205 (9th Cir.1981). While plaintiff will not be able to recover treble damages in Canada as it might under RICO, the mere fact that certain theories of recovery are not recognized is not equivalent to "no remedy at all." *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir.1984). It is true that a dismissal on forum non conveniens grounds is the "functional equivalent" of finding that defendant's alleged acts are beyond the reach of RICO, *Mitsui*, 671 F.2d at 891, but that is what forum non conveniens is all about. Federal common law has long authorized dismissal based on forum non conveniens, notwithstanding that there is subject matter jurisdiction over the claim. *Gilbert*, 330 U.S. at 507, 67 S.Ct. at 842. Moreover, courts applied the doctrine in federal admiralty cases long before it was extended to diversity cases in *Gilbert*. *Piper*, 454 U.S. at 248 n. 13, 102 S.Ct. at 262 n. 13; *Tramp Oil and Marine Ltd. v. M/V Mermaid I*, 743 F.2d 48, 50 (1st Cir.1984). The fact that plaintiff has included a RICO claim in its complaint has no bearing on the Court's forum non conveniens determination. As the Supreme Court stated in *Piper*, it is improper for the Court to give substantial weight to the possibility that a change in law will either be unfavorable to the plaintiff or favorable to the defendant. 454 U.S. at 252 n. 19, 102 S.Ct. at 264 n. 19. What is relevant is whether a remedy is available. It is undisputed that Canadian law recognizes a cause of action for negligence. There is no reason to believe that plaintiff will be treated unfairly there. *Ledingham*, 628 F.Supp. at 1450. There-

fore, Canada is an adequate alternative forum.

■■■ In *Gulf Oil Co. v. Gilbert, supra*, the Supreme Court identified several public and private interest factors which must be considered when ruling on a forum non conveniens motion. Generally, there are four private interest factors to be considered:· access to sources of proof; availability of witnesses; need for a view of the premises; and other practical problems. The public interest factors include: court docket congestion; burden on the community if no connection with the case; local interest in having localized controversies decided at home; and the court's familiarity with governing law. Although typically there is a "strong presumption" in favor of the plaintiff's choice of forum, the presumption "applies with less force" where, as here, the plaintiff is foreign. *Piper*, 454 U.S. at 255, 102 S.Ct. at 265. The Magistrate correctly concluded, therefore, that there is a slight presumption in favor of retaining jurisdiction.

The Canadian connection in this action is substantial. Sarabond was marketed and sold in Canada through Dow Chemical Canada, Inc. ("Dow Canada"), a Canadian corporation. Dow trained employees of Dow Canada in the marketing of Sarabond, and provided them with a brochure, which is alleged by Penwest to contain fraudulent information. Thus Dow allegedly disseminated fraudulent information into Canada. The product was used to make masonry panels which were constructed off-site in Toronto, then transported and installed in Bond Place. Penwest, a Canadian corporation, was the general contractor and owner of Bond Place. The architect for Bond Place is a Canadian citizen and resident. The consulting engineer on the job is a Canadian corporation. Most, if not all, of the construction workers are Canadian. However, the events giving rise to this action also had significant contacts with the United States. Dow resides here, and the product was designed and tested here. Between 1970 and 1975, during the period Bond Place was constructed, the product was marketed by Amspec of Columbus,

Ohio, a wholly owned subsidiary of Dow which was subsequently dissolved. Moreover, the alleged RICO violations and acts of mail and wire fraud, if true, occurred in Michigan and Ohio.

The relative access to sources of proof, including witnesses, is roughly equal between a trial here as opposed to Toronto. Although many potential witnesses will likely be current Dow employees, and the Court could condition a dismissal on the availability of those employees for trial in Canada, some potential witnesses are former Dow employees, over whom Dow has no control. Similarly, Penwest has no control over the Canadian architect, engineer, and construction workers, and the Court could not require their attendance at a trial in the United States. The procedure known as letters rogatory could be used to obtain testimony from witnesses in Canada, or from Canada to the United States and F.R.C.P. 28(b) allows depositions to be taken in foreign countries. One significant factor favoring a retention of jurisdiction is the existence of a multidistrict Sarabond data base in Colorado, and the potential for consolidation of this case with other Sarabond cases for pretrial. This would give Penwest access to a whole host of discovery materials. Dow has, however, stipulated to the broadest possible use of these materials in a Canadian court. The Court agrees with the Magistrate that the need for a jury to view the premises is slight. The damage to the structure could more appropriately be shown through photographs, since at least some of the damaged areas may not be accessible to a jury.

One other practical problem with a trial in Canada is that Dow would be unable to implead third-party defendants such as the architect, masonry contractor and engineer. The Supreme Court has recognized this as an appropriate factor to consider. *Piper,* 454 U.S. at 259, 102 S.Ct. at 267. The Court, however, gives little weight to this factor because Dow does not state that it actually intends to implead someone, only that it wants the *option* to do so. On balance, the private interest factors slightly favor a denial of defendant's motion, chiefly because of the multidistrict data

base. But this is not the end of the Court's inquiry.

As the Supreme Court stated in *Gilbert* and again in *Piper,* there is "a local interest in having localized controversies decided at home." *Piper,* 454 U.S. at 260, 102 S.Ct. at 268. In *Dowling v. Richardson-Merrell, Inc.,* 727 F.2d 608 (6th Cir.1984), the court held that *in regulated industries* such as pharmaceuticals in that case and passenger aircraft in *Piper,* "the country where injury occurs has a particularly strong interest in product liability litigation." *Id.* at 616. Moreover, in *Piper,* the Supreme Court, in response to an argument that the United States has an interest in ensuring that American manufacturers are deterred from producing defective products, stated that "the incremental deterrence that would be gained if this trial were held in an American court is likely to be insignificant." 454 U.S. at 260–61, 102 S.Ct. at 268.

The present case has certain similarities to the regulated industries in *Piper* and *Dowling.* The Canada Mortgage and Housing Corporation, an instrumentality of Canada's federal government, insured the mortgage on Bond Place and routinely visited the construction site. At one point the CMHC ordered construction halted at Bond Place because of concerns over the use of Sarabond, and conducted investigations regarding Sarabond with Dow. As a result of their investigation, the CMHC required Penwest to install steel shelf angles to support the Sarabond panels already installed and to embed steel reinforcing rods in the remaining panels to be installed. In *Dowling,* the Sixth Circuit reasoned: "This interest is highlighted in the present case by the plaintiff's *charge* that the defendant concealed adverse test results from the national health authorities in Great Britain." 727 F.2d at 616 (emphasis added). Similarly, here, Penwest alleges a cover-up by Dow, including misrepresentations to members of Canadian government agencies, presumably the CMHC. Although the building industry is not as inherently threatening to public safety as aviation and drugs, it is sufficiently similar and regulat-

ed to conclude under *Dowling* that the country where the injury occurred has a greater interest in trying the case than the country where the product was manufactured. *Kryvicky v. Scandinavian Airlines System,* 807 F.2d 514, 517 (6th Cir. 1986).

This Court's docket congestion is not a determinative factor in this case because it is not tremendously overburdened. It would similarly not be an undue burden on the community to try the case here given that this is Dow's home court, and the substantial factual connection here.

The final factor in the Court's analysis is choice of law, and the potential difficulty in applying foreign law. The Supreme Court stated in *Piper* that the public interest factors favor dismissal where a court would be required to "untangle problems in conflict of laws and law foreign to itself." 454 U.S. at 251, 102 S.Ct. at 263. In determining choice of law, both parties have overlooked an important issue. While the Supreme Court held in *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), that in a diversity case a federal court applies the choice of law rules of the state in which it sits, the Court has never determined whether this applies in federal question cases. *See Blake v. C.I.R.,* 697 F.2d 473, 477 n. 4 (2d Cir.1982). This issue has been referred to by one court as "a hornet's nest of open questions." *United States v. Mitchell,* 349 F.2d 94, 101 n. 5 (5th Cir.1965) (avoiding the issue).

■ This is not, however, a pure federal question case. There is diversity as well as federal question jurisdiction. A federal court sitting only in diversity must apply the law of the state in which it sits. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This rule also applies to state claims over which a court exercises pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715,

726, 86 S.Ct. 1130, 1139, 16 L.Ed. 218, 228 (1966). The First, Second, Third, Fourth, Seventh, and District of Columbia Circuit Courts of Appeals have applied *Klaxon* by analogy to find that the choice of law rules of the forum also govern pendent state claims. *Bi-Rite Enterprises, Inc. v. Bruce Miner Co.,* 757 F.2d 440, 442 (1st Cir.1985); *National Resources Trading, Inc. v. Trans Freight Lines,* 766 F.2d 65, 68 (2d Cir.1985); *Rohm & Haas Co. v. Adco Chemical Co.,* 689 F.2d 424, 428–29 (3d Cir.1982); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 49 n. 11 (4th Cir.1983), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985); *Baltimore Orioles v. Major League Baseball Players,* 805 F.2d 663, 681 (7th Cir.1986); *McSurely v. McClellan,* 753 F.2d 88, 110 (D.C.Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). The application of *Klaxon* is even more appropriate in cases where, as here, in addition to federal question jurisdiction, diversity of citizenship provides an independent jurisdictional basis for the state law claims. The existence of a federal claim, in addition to state law claims, should not negate the application of *Klaxon* just as it does not affect the application of *Erie* even in cases where diversity does not exist. "It is established law that the source of the right, rather than the basis of federal jurisdiction invoked, controls determination of the applicable law." *Cutler v. Bank of America National Trust & Savings Association,* 441 F.Supp. 863, 865 (N.D.Cal.1977) *quoted in Trinh v. Citibank,* 623 F.Supp. 1526, 1530 (E.D. Mich.1985). Therefore, Michigan choice of law rules will be applied in determining the law applicable to the state law claims. There is no choice of law decision to be made with respect to the RICO claim, as the alleged violations, if true, occurred in the United States. It is clear from the language and legislative history of the statute that a foreign plaintiff can have standing to bring a RICO action.[2]

---

**2.** 18 U.S.C. § 1964(c) provides: *"Any person* injured in his business or property ... may sue therefor in any appropriate United States district court...." (emphasis added) Section 1961(3) broadly defines person "to include any

individual or organization that may hold any property interest." H.R.Rep. No. 1549, 91st Cong., 2d Sess. 58, *reprinted in* 1970 U.S.Code Cong. & Admin.News 4007, 4032. *See American Bonded Warehouse Corp. v. Air France,* 653

The Michigan Supreme Court recently adopted a governmental interest analysis approach to choice of law. In *Olmstead v. Anderson*, 428 Mich. 1, 400 N.W.2d 292 (1987), the court applied interest analysis to conclude that the lex loci delicti, Wisconsin, had no interest in applying its limitation of damage provision to a suit between two nonresidents. In so holding, the Michigan Supreme Court approvingly quoted the following passage:

> [W]here all parties were Michigan residents, the Court has applied Michigan law. In such a case ... Michigan has a very strong interest in applying its law to a case concerning only its residents. Where either plaintiff or defendant is not a Michigan resident nor doing business in Michigan, courts have compared the interests of each jurisdiction in having its law govern the case.

428 Mich. at 21, 400 N.W.2d 292 (quoting *Vogh v. American International Rent-A-Car, Inc.*, 134 Mich.App. 362, 368, 350 N.W.2d 882 (1984)) (citations omitted). Several guidelines may be distilled from *Olmstead:*

1) When neither party is a resident[3] of Michigan, Michigan law generally will not be applied even if Michigan is the place of the wrong.

2) When both parties are Michigan residents, Michigan law generally will be applied, even if Michigan is not the place of the wrong.

3) When the plaintiff is a Michigan resident and the defendant is not, Michigan law generally will be applied, especially if Michigan is the place of the wrong.

4) When the defendant is a Michigan resident and the plaintiff is not, Michigan law generally will not be applied, especially if Michigan is not the place of the wrong.

It is necessary for the Court to identify the premises underlying the above generalizations.

While Michigan courts traditionally have applied the lex loci delicti, law of the place of the wrong, in tort cases, *Olmstead* noted that this factor is no longer of great or particular significance. 428 Mich. at 24, 400 N.W.2d 292. The place of the wrong will never be dispositive in a given case, but it remains a factor to be considered in weighing the interests of the involved states.[4] In contrast to the lex loci delicti, the plaintiff's residence is a paramount consideration in determining which state's law to apply in a tort case. The primary purpose of tort law is to compensate persons injured by the negligence of another. *See Abel v. Eli Lilly & Co.*, 418 Mich. 311, 328, 343 N.W.2d 164 (1984). A particular state does not, however, have a strong interest in applying its tort law to compensate a nonresident plaintiff. *Bryant v. Silverman*, 146 Ariz. 41, 703 P.2d 1190 (1985) (cited approvingly in *Olmstead* for this proposition). One rationale for this conclusion is that the social and economic consequences of a plaintiff's injury will be visited upon that party's home state. Sedler, *Choice of Law in Michigan: Judicial Method and the Policy-Centered Conflict of Laws*, 29 Wayne L. Rev. 1193, 1215 (1983). On the other hand, a state would have an interest in applying its limitation of damages provision to a case involving a resident defendant, because the policy behind such a law is to protect defendants from exorbitant damage awards. *Olmstead*, 428 Mich. at 28, 400 N.W.2d 292.

---

F.Supp. 861, 864 (N.D.Ill.1987) (broad definition of person clearly does not exempt instrumentalities of foreign sovereigns).

3. The use of the term resident encompasses those entities doing business in Michigan for purposes of these guidelines.

4. The lex loci delicti represents a state's interest in regulating "conduct" within its borders. *See Olmstead*, 428 Mich. at 28, 400 N.W.2d 292. Michigan courts have recognized that a second-

ary purpose of tort law is to deter tortious conduct. *See Holloway v. General Motors Corp.*, 403 Mich. 614, 626, 271 N.W.2d 777 (1978). Because the lex loci is of no great significance, Michigan courts accordingly will give little weight to the general regulatory purposes of tort law. *But cf.* Brilmayer, *Interest Analysis and the Myth of Legislative Intent*, 78 Mich.L.Rev. 392, 396 (1980) (criticizing interest analysis for not considering that statutes may evidence regulatory policies as well as compensatory ones).

Thus a weighing of interests must take place in order to determine the applicable law under Michigan choice of law rules.

In this case, an Ontario resident is suing a Michigan resident for damage to a building located in Toronto. The product in question was marketed and sold in Canada, by a Canadian corporation. Ontario is the place of the wrong.[5] The social and economic consequences of harm to the building will be felt in Ontario. Michigan has no interest in applying its products liability law, which requires proof of negligence *Prentis v. Yale Manufacturing Co.*, 421 Mich. 670, 365 N.W.2d 176 (1984), to compensate a nonresident plaintiff for injury to a building in Ontario. Ontario does, however, have a strong interest in applying its law to compensate resident plaintiffs who are injured by products disseminated into Ontario by out-of-state defendants. That interest is highlighted in this case by the Canadian government's insurance of the mortgage and regulation of construction of Bond Place. *Cf. Dowling, supra,* 727 F.2d at 616 (discussing forum non conveniens local interest factor in a non-choice of law context). In *Bennett v. Enstrom Helicopter Corp.*, 686 F.2d 406 (6th Cir.1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1202, 75 L.Ed.2d 444 (1983) and *Hampshire v. Ford Motor Co.*, 155 Mich.App. 143, 399 N.W.2d 36 (1986) (both cited approvingly in *Olmstead*), a nonresident plaintiff brought a products liability action against a resident defendant in Michigan for an injury occurring outside of Michigan. In each case, the court applied the law of the plaintiff's residence. Similarly, here, it is the opinion of the Court that Michigan courts would apply Ontario law on the state law claims.

*C. Conclusion*

As previously stated, the *Gilbert* private interest factors are inconclusive, weighing slightly in favor of retaining this case. The determining factors in this particular case are the public interest factors. Ontario has a strong local interest in trying the case at home. Moreover, under Michigan choice of law rules, the Court would apply Ontario law on the state law claims—law with which the Court is unfamiliar. Accordingly, this action will be dismissed under the common law doctrine of forum non conveniens, subject, however, to the following conditions:

1) Dow submits itself to the jurisdiction of Canadian courts and accepts service of process, and the Canadian courts are willing to exercise such jurisdiction.

2) Dow waives all statute of limitations defenses.

3) Dow causes all witnesses within its control to be available to testify in Canada.

4) Dow allows the widest possible use of discovery materials from the Sarabond data base permissible under Canadian law *or* the Federal Rules of Civil Procedure, subject of course to the discretion of the Canadian courts.

5) Dow pays any judgment rendered by a Canadian court.

The above conditions only relate to the case presently before the Court. An order of dismissal will be entered upon Dow's filing of a stipulation agreeing to all of the Court's conditions.

---

**5.** In products liability cases, Michigan courts have held that "the place of the wrong" is the place of the injury. *Sexton v. Ryder Truck Rent-* al, 413 Mich. 406, 421 n. 6, 320 N.W.2d 843 (1982); *Hill v. Clark Equipment Co.*, 85 Mich. App. 1, 6, 270 N.W.2d 722 (1978).