727 A.2d 481 (1999)
320 N.J. Super. 386
April M. KURZKE, Individually and as a Representative of the Estate of Hartmut Kurzke and Brendan Kurzke, an infant by his Guardian ad Litem, April Kurzke, Plaintiffs-Appellants,
v.
NISSAN MOTOR CORPORATION IN U.S.A., Nissan Research and Development, Ford Motor Company, Inc., and Bristol Motors, Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1999.
Decided April 9, 1999.
*482 Peter L. Korn, Springfield, for plaintiffs-appellants (McDonough, Korn, Eichhorn & Boyle, attorneys; Mr. Korn and R. Scott Eichhorn, of counsel; AnnMarie West, on the brief).
Gerard Cedrone, Philadelphia, PA, for defendants-respondents (Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, attorneys; Mr. Cedrone, of counsel; Jo E. Peifer, on the brief).
Before Judges LONG, WEFING and CARCHMAN.
The opinion of the court was delivered by LONG, P.J.A.D.
Plaintiffs, April M. Kurzke, individually and as a representative of the Estate of Hartmut Kurzke and Brendan Kurzke by his Guardian ad Litem April Kurzke, appeal from the trial judge's dismissal, on forum non conveniens grounds, of the products liability *483 action they filed against defendants Nissan Motor Corporation In U.S.A., Nissan Research and Development, Ford Motor Company, Inc. and Bristol Motors, Inc.
According to plaintiffs, in November of 1992, April Kurzke and her husband, Hartmut, were living in Warren, New Jersey. On November 23, 1992, they went to Bristol Motors in North Plainfield to purchase a minivan. They specifically requested Bristol Motors salesperson Steven Handelman to assist them in their purchase because he had sold them a Nissan Maxima in 1990. Before purchasing the 1993 Nissan Quest, however, the Kurzkes had particular concerns regarding the safety of the vehicle, which concerns they shared with Handelman. Specifically, they informed Handelman that they were worried that the Nissan Quest did not have an air bag and, for that reason, they were also considering purchasing (from one of Bristol Motors' competitors) a Dodge Caravan, a vehicle equipped with an air bag. Handelman allayed their anxiety by explaining that the steering column on the Nissan Quest would collapse upon impact. A collapsible steering column, according to Handelman, would effectively function like an air bag. Handelman supported his express oral promises by showing the Kurzkes a Nissan advertisement which confirmed them. Relying on all of these representations, the Kurzkes purchased the 1993 Nissan Quest minivan. At that time, they had no intention of leaving New Jersey.
Thereafter, in 1993, Hartmut Kurzke, a Ph.D. in chemistry, was offered a transfer to Hanau, Germany, by his employer, Degussa Corporation. He was expected to remain in Germany for four or five years and then to return to assume an administrative position at Degussa's Ridgefield Park headquarters. Hartmut Kurzke arrived in Germany to begin his training on August 1, 1994. The family later joined him.
On August 14, 1995, the Kurzkes and their son, Brendan, then four years old, were travelling on the Autobahn in the city of Olpe, Germany, in their 1993 Nissan Quest when another vehicle, operated by Freida Adler in the oncoming lane, unexpectedly crossed into the Kurzke's lane and struck their vehicle head-on. The steering column failed to collapse upon impact and Hartmut Kurzke, who was operating the Nissan Quest, was trapped and compressed between the seatback and the steering column for nearly two hours before he died of fatal chest and abdominal injuries. As passengers in the vehicle at that time, April and Brendan observed the slow, painful death of their husband and father.
Plaintiffs sued defendants on both products liability and breach of warranty theories by filing a complaint in the Superior Court of New Jersey, Law Division, Middlesex County.[1] Specifically, plaintiffs contended that the steering column of their 1993 Nissan Quest minivan was designed to collapse upon impact to the vehicle and, contrary to its design, failed to collapse, causing Hartmut Kurzke to sustain injuries. Plaintiffs further asserted that defendants made express warranties that the steering column would collapse upon frontal impact in order to persuade them to purchase the vehicle and that these warranties were breached. All named defendants are American corporations.
Defendants moved to dismiss the action based on the doctrine of forum non conveniens. They asserted that all discovery materials concerning the crash and Hartmut Kurzke's death are in Germany as are all eyewitnesses and police and medical witnesses, none of whom are subject to compulsory process in New Jersey; that under their theory of the case (i.e., that Hartmut Kurzke died as a result of the high speed crash, not from the failure of the steering column to collapse) the Estate of Frieda Adler should be impleaded yet this is not possible in New Jersey; that the New Jersey courts would suffer "enormous administrative difficulties" in handling a case which has "no connection" to Middlesex County; and that a dismissal would result in a single litigation in Germany instead of two cases an ocean apart.
Plaintiffs countered that they are American citizens and New Jersey residents temporarily *484 in Germany; that they purchased the Nissan Quest in New Jersey; and that the vehicle was designed, manufactured and sold by American companies. Plaintiffs further argued that additional claims exist involving the New Jersey dealership's breach of express warranties regarding the collapsibility of the steering column. According to plaintiffs, when this products liability case is viewed as it should be (separate and distinct from the auto negligence action), it is clear that defendant Nissan Research and Development, the American corporation which designed the steering column, and American design defect experts will offer the most crucial evidence. Plaintiffs stressed to the judge that the only connection to Germany was the location in which the automobile accident occurred. That slim reed was an inadequate basis to overcome the presumption in favor of their choice of their home forum.
The trial judge ruled in favor of defendants and dismissed the complaint. After citing appropriate legal principles and outlining the facts of the case, she assessed the evidence this way:
I looked at the access to the evidence and the majority of the fact witnesses are in Germany, including the plaintiff herself. All of the emergency personnel that responded to the scene, the fire, the police personnel, the medical personnel are in Germany. Any medical personnel that treated the decedent inafter the accident are also in Germany, and the other drivers involved in the accident are in Germany. All of these witnesses are beyond the jurisdiction of this Court.
The scene of the accident is in Germany and that's important and there's some contention that there may have been construction on the Autobahn that may have been a contributing factor, and the inspection of the scene would have to obviously occur in Germany.
The vehicle in question, the vehicle involved in the accident that allegedly has this defect is located in Germany and all the other vehicles involved in the accident are in that country.
In addition, all records are in Germany and are written in German, so the medical reports, any police and investigatory reports involving this serious accident are obviously located in that country and are written in German.
And I note that even the plaintiff, while the plaintiff takes the position that the happening of the accident isn't really the focus of the case, the focus of the case is the defect in the vehicle, even the plaintiff acknowledges that there still would have to be discovery of these emergency personnel and an examination of the vehicle to properly litigate this case.
In addition, it's come before me at oral argument today that there may have been some alterations to the vehicle before it entered that country in order to comply with German law. Obviously, those records would be in Germany.
In addition to the problem with the evidence, and I do note that there is evidence in the United States. The car was manufactured here and was sold here, so all of thosethat evidence and those witnesses involved in the design of the vehicle would be located in the United States, however, if we look at this from the focus of a products liability case, the expert testimony would be, obviously, key and certainly in a country like Germany, which is such a highly industrialized state with major car manufacturers, it's not a situation where there would be any problem that we could anticipate in gaining expert witnesses in Germany.
Another important factor in addition to where the evidence is located is that fact that the other driver involved in this vehicle is beyond the jurisdiction of this Court and, indeed, there is a case pending in Germany against that driver. To permit this case to proceed here would deprive, I guess, the defendant of any rights of contribution in any kind of comparative negligence with respect to that driver.
In addition, were the case to proceed here we would really have two cases involving the same accident pursuing in two separate jurisdictions with all kinds of possible inconsistencies and overlapping discovery *485 problems. What one judge may preclude another judge may permit.
In addition, to permit this case to go forward here would present a tremendous burden on the court, as well as the litigating firms. We have all of these translation problems and it's come to my attention at oral argument that not only is there the normal problem of having a document translated into another language, but there may be differences of opinion as what the proper translation is which are different. It's also going to be very cumbersome and we're going to have to probably have a judge especially assigned to this. We'd have to become familiar with a lot of the intricacies of the Hague Convention in discovery and it's just very burdensome for us to do that.
And I would just like to address the plaintiff's argument that a lot of this evidence and a lot of these concerns the defense has addressed are focused on determining how the accident took place and the plaintiff's position that the real focus of the case is on the engineering aspects of the vehicle in question, however, I think that the defendants, as they point out, the crash worthiness of the vehicle will depend in part on the crash itself and they take the position that it may have just been, I believe, the high speed of the crash that caused the death and not any defect in the vehicle.
As a result, they think that there will have to be a close examination of the dynamics of that crash and as I previously indicated, so much of that information is housed in Germany.
In addition, we would be asking a New Jersey jury, really, to evaluate a crash that took place on the Autobahn which is really, if any of you have ever been to Europe, a very different driving condition in many ways than what we face here in the United States because of the high speeds.
So, for all of these reasonsoh, also let me just briefly address the contention that we do have some representations made by the dealers who sold the vehicle to the plaintiff that the column would collapse upon impact, and I don't see that there's any real dispute that that was part of the apparent marketing of the vehicle in question and apparently thoseyou represent those parties as well, is that correct?
MS. PFEIFER: Yes.
THE COURT: And they're also agreeing to accede to the jurisdiction of the German court?
MS. PFEIFER: Yes, Your Honor.
THE COURT: The other aspect I have to consider was whether or not the German courtthere was another jurisdiction for the plaintiff to go to and certainly these other courts are available. They have recognized products liability claims and have agreed to accede to the jurisdiction of that Court.
So, for all these reasons, this Court believes that the motion should be granted, that to litigate this case in New Jersey would be most inconvenient and that Germany is a much better jurisdiction to be able to deal with these issues.[2]
Plaintiffs appeal. We affirm.
The doctrine of forum non conveniens is firmly embedded in the common law of this State. Civic Southern Factors Corp. v. Bonat, 65 N.J. 329, 332, 322 A.2d 436 (1974) (citing Starr v. Berry, 25 N.J. 573, 138 A.2d 44 (1958)). It is utilized "where a weighing of all of the many relevant factors, of which residence is but part, decisively establishes that there is available another forum where trial will best serve the convenience of the parties and the ends of justice...." Gore v. United States Steel Corp., *486 15 N.J. 301, 311, 104 A.2d 670, cert. denied, 348 U.S. 861, 75 S.Ct. 84, 99 L.Ed. 678 (1954).
A forum non conveniens analysis "examines whether the New Jersey forum is totally inappropriate, regardless of who filed the action or when it was filed." American Home Prods. Corp. v. Adriatic Ins. Co., 286 N.J.Super. 24, 35, 668 A.2d 67 (App.Div. 1995). However, "[t]here is a strong presumption in favor of retaining jurisdiction where plaintiff is a resident who has chosen his [or her] home forum." D'Agostino v. Johnson & Johnson, 225 N.J.Super. 250, 262, 542 A.2d 44 (App.Div.1988), aff'd, 115 N.J. 491, 559 A.2d 420 (1989), appeal after remand, 242 N.J.Super. 267, 576 A.2d 893 (App.Div.1990) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 n. 24, 102 S.Ct. 252, 266 n. 24, 70 L.Ed.2d 419, 436 n. 24 (1981)).
... [T]he present tendency is to avoid a rigid formula and to weigh sundry factors, both private and public, which bear upon
the justness of a plaintiff's choice.... Thus there has emerged over the years the principle that plaintiff's choice may not be defeated upon a mere balance of conveniences. [Starr v. Berry, 25 N.J. 573, 584, 138 A.2d 44 (1958)]. Consequently, "a plaintiff's choice of forum ordinarily will not be disturbed except upon a clear showing of real hardship or for some other compelling reason." Civic Southern Factors v. Bonat, 65 N.J. [329,] 333, 322 A.2d 436 [(1974).] Dismissal of a complaint is unwarranted unless the plaintiff's choice is shown to be "demonstrably inappropriate." Ibid.
[Ibid.]
According to Mowrey v. Duriron Co., Inc., 260 N.J.Super. 402, 409, 616 A.2d 1300 (App. Div.1992), in considering a forum non conveniens motion, the transfer "must not result in a significant hardship to plaintiff." If it does, the inquiry is over. If, on the other hand, the transfer would not significantly inhibit plaintiff, the next inquiry is whether the plaintiff's chosen forum is "demonstrably inappropriate." Kreuzer v. Kreuzer, 230 N.J.Super. 182, 186, 553 A.2d 55 (App.Div.), certif. denied, 117 N.J. 118, 564 A.2d 848 (1989). The demonstrably inappropriate analysis focuses, among other things, on hardship to defendant. It is defendant's burden to prove that the forum chosen by plaintiff was designed to subject him or her to harassment and vexation. Starr, supra, 25 N.J. at 584, 138 A.2d 44.
Courts may consider both public and private interest factors in determining whether plaintiff's forum is demonstrably inappropriate. Private interest factors include the accessibility of proof, availability of compulsory process, availability of witnesses and the necessity of viewing the premises. D'Agostino I, [supra] 225 N.J.Super. at 263, 542 A.2d 44 (incorporating the factors proposed in the seminal case of Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062-63 (1947)); Westinghouse v. Liberty Mutual Ins., 233 N.J.Super. 463, 469, 559 A.2d 435 (App.Div.1989). Public interest factors include administrative difficulties, local interest in the trial and the undesirability of imposing jury duty on local community members when no local issue is at stake. Ibid. These points were reiterated in D'Agostino I, supra, 115 N.J. at 495, 559 A.2d 420, with the admonition that there be a factual nexus between the issues involved and the forum selected by the plaintiff.
[Mowrey, supra, 260 N.J.Super. at 409-10, 616 A.2d 1300.]
Applying these standards, we are satisfied that the trial judge did not mistakenly exercise her discretion in dismissing plaintiffs' complaint.
We begin with plaintiffs' contention, raised at oral argument, that they will be subjected to serious hardship if they are compelled to try the case in Germany because the German courts do not recognize emotional distress damages under Portee v. Jaffee, 84 N.J. 88, 98-99, 417 A.2d 521 (1980). It is not clear to us whether this is a correct statement of German law. However, we need not resolve this issue because it is well-established that resolution of a forum non conveniens claim should not be based upon how hospitable the forum's substantive law principles are to plaintiff. D'Agostino, supra, 115 N.J. at 496, 559 A.2d 420. It follows that an allegation that the law is less favorable *487 to plaintiff in the alternative forum is not the type of hardship which would warrant resolving a forum non conveniens issue in plaintiff's favor without further analysis.
This is not to suggest that the laws of the forum may not be considered for any purpose. On the contrary, it is also well-settled that they may be viewed as illustrating the scope of the potential connection between plaintiff's allegations and the forum in evaluating the public interest factors. Id. at 497, 559 A.2d 420. We thus consider the existence of Portee v. Jaffee damages as a public interest connection justifying plaintiffs' choice of forum.
Turning to the remaining public interest factors, we have no doubt of New Jersey's interest in this controversy and in the safety of vehicles sold to its citizens. Nor is there any question of its interest in assuring the truthfulness of the representations made by its corporate citizens to guarantee those sales. Likewise, we are satisfied that the issues raised by plaintiff are of interest to the local community and that they warrant the imposition of jury duty on our citizens. In short, if the public interest factors stood alone, there would be no doubt that New Jersey is an appropriate forum.
They do not stand alone however. The private interest factors must also be considered. In assessing such factors, the truth of the matter is that there will be witness inconvenience to one extent or another regardless of whether this case is tried here or in Germany. The American witnesses will be required to travel to Germany if it is tried there, and the converse is true if it is tried here. Each side will undergo some difficulty in each forum. For example, the practical problem of translation, which troubled the trial judge in terms of the German records, is equally problematic if all the American documentation and expert evidence has to be translated into German. In other words, there is no perfect forum for this case. However, that is not the standard. The standard is whether the home forum chosen by plaintiffs is "demonstrably inappropriate." Like the trial judge, we have concluded that it is. In reaching our conclusion, it is the private interest factors which carried the day; more particularly, the accessibility of proof, the availability of compulsory process and the availability of witnesses. D'Agostino I, supra, 225 N.J.Super. at 263, 542 A.2d 44; Mowrey, supra, 260 N.J.Super. at 409-10, 616 A.2d 1300.
It is clear to us that litigation in New Jersey would deprive defendants of compulsory process to much of the testimonial evidence in Germany which they need to establish the details of their theories of defense. Among those defenses will be that the steering column performed properly and, even if it did not, that Hartmut Kurzke died as a result of the speed and ferocity of the crash, not the failure of the steering column. This testimony will come from eyewitnesses and medical and emergency personnel and will provide the basis for defendants' experts' opinions. Although litigation here would afford plaintiffs greater ease in accessing sources of proof relevant to their theories of product defect and breach of warranty, it would wrongly bar defendants from access to concededly important evidence upon which their theory of the case rests. This is a crucial weight in a forum non conveniens analysis justifying dismissal in favor of a forum in which all parties are on equal footing in presenting their witnesses. Indeed,
every court which has squarely faced this issue has ruled that dismissal is required to assure equal access to compulsory process.[3] *488 The "inability of both parties to obtain the full panoply of relevant ... evidence would greatly hinder fair resolution of this dispute." Pain v. United Technologies Corp., 637 F.2d 775, 788 (D.C.Cir.1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981) (relying on Dahl v. United Technologies Corp., 632 F.2d 1027, 1030 (3d Cir.1980)).
Plaintiffs offer as an alternative that defendants could videotape depositions of the German witnesses under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 28 U.S.C. § 1781 Defendants counter that it is extraordinarily difficult to receive permission for such a deposition and that, even if this was not the case, a deposition, even a videotaped one, is not a substitute for live testimony. We agree. "[T]o fix the place of trial at a point where litigants cannot compel personal attendance of witnesses and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." Gulf Oil Corp., supra, 330 U.S. at 511, 67 S.Ct. at 844, 91 L.Ed. at 1064 See also Schertenleib v. Traum, 589 F.2d 1156, 1159 (2d Cir.1978) (absence of live testimony is a "very serious handicap" favoring dismissal); ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse, 652 F.Supp. 1289, 1296 (S.D.N.Y.1987) (dismissing on forum non conveniens grounds, after concluding that unavailability of key witness and the absence of live testimony outweighed plaintiff's choice of home forum).
A depositionvideotaped or otherwise simply does not simulate the conditions of trial, where the witness must testify in a courtroom, on the witness stand, before a judge and a jury. These inimitable conditions may mean everything when the "opportunity for the factfinder to appraise the credibility of key witnesses [may make the determinable difference] in this case."

[Kultur Int'l Films Ltd. v. Covent Garden Pioneer, Ltd., 860 F.Supp. 1055, 1067 (D.N.J.1994) (citing ACLI Int'l Commodity Servs., supra, 652 F.Supp. at 1296)]
Moreover, another private interest factor strongly favors dismissal: the inability of defendants to implead the Estate of Frieda Adler as a defendant in the New Jersey action. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 259, 102 S.Ct. 252, 267, 70 L.Ed.2d 419, 437 (1981). One of defendants' theories is that Adler was the sole source of Hartmut Kurzke's suffering and death due to the fact that she caused the high speed crash which Hartmut could not have survived even if the steering column had collapsed properly. The inability to implead a party has consistently been held to justify dismissal on forum non conveniens grounds. In fact, every federal circuit which has been faced with this issue has recognized the primacy of inability to implead in a forum non conveniens analysis.[4] *489 While it is true that defendant could maintain a suit for indemnity against Adlers' estate after the litigation here, it would be far more expeditious to resolve all the claims in one trial. de Melo, supra, 801 F.2d at 1062-63 (citing Piper, supra, 454 U.S. at 259, 102 S.Ct. at 268, 70 L.Ed.2d at 438).
In short, we are satisfied that the private interest factors weigh heavily in favor of dismissal; that maintenance of this action would be a real hardship to defendants and that the trial judge properly determined that, in such circumstances, New Jersey is a demonstrably inappropriate forum.
Affirmed.
WEFING, J.A.D., dissenting.
My colleagues have concluded that defendants' motion to dismiss was properly granted on the grounds of forum non conveniens. By doing so, they have precluded a New Jersey resident from obtaining access to a New Jersey court to seek damages based upon: (1) an allegedly defective vehicle that was purchased in New Jersey and designed and manufactured in the United States; and (2) alleged misrepresentations made in New Jersey during the purchase of that vehicle. I do not think that result is supported by the record or compelled by the case law my colleagues rely upon. Accordingly, I dissent.[1]
It is important to recognize that defendants moved to dismiss shortly after plaintiffs filed their complaint. The parties sharply dispute the circumstances surrounding the accident. My colleagues, however, have adopted the defendants' descriptions of the accident as a "high-speed crash," and one characterized by "speed and ferocity." Similarly, the trial court referred to the difficulty of
evaluat[ing] a crash that took place on the Autobahn which is really, if any of you have ever been to Europe, a very different driving condition in many ways than what we face here in the United States because of the high speeds.
Plaintiffs stress, however, that this accident occurred at a construction site, at which the traffic had been compelled to slow down. That version is supported by the police report, a translation of which has been supplied to us. According to that report, one witness estimated a speed of 60 kilometers per hour, or approximately 35 miles per hour.[2]
I have no essential dispute with my colleagues' description of the principles underlying the doctrine of forum non conveniens and will not restate them. I would note, however, that New Jersey courts arguably appear to give greater weight to a plaintiff's choice of forum than do federal courts. New Jersey courts require a defendant to show that a plaintiff's choice of forum is "demonstrably inappropriate," Civic Southern Factors Corp. v. Bonat, 65 N.J. 329, 333, 322 A.2d 436 (1974); federal courts speak in general terms that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).
Further, in many of the federal cases upon which my colleagues rely, the plaintiff was not a resident of the jurisdiction sought to be invoked; in such an instance, the plaintiff's choice of forum is given even lesser weight. See, e.g., Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G., 955 F.2d 368 (5th Cir.1992); Camejo v. Ocean Drilling & Exploration, 838 F.2d 1374 (5th Cir.1988); de Melo v. Lederle Laboratories, *490 801 F.2d 1058 (8th Cir.1986); Pain, supra; Dahl v. United Technologies Corp., 632 F.2d 1027 (3d Cir.1980); Schertenleib v. Traum, 589 F.2d 1156 (2d Cir.1978); Farmanfarmaian v. Gulf Oil Corp., 588 F.2d 880 (2d Cir.1978); Penwest Development Corp. Ltd. v. Dow Chemical Company, 667 F.Supp. 436 (E.D.Mich.1987); In re Disaster at Riyadh Airport, supra. Here, however, plaintiffs are New Jersey residents temporarily living in Germany, and the vehicle which is at the heart of this litigation was purchased in New Jersey.
The trial court found that the "public" factors involved in a forum non conveniens analysis weighed in favor of dismissing the action. My colleagues correctly conclude that the four "public" factors demonstrate that New Jersey is an appropriate forum but decide that the "private" factors of accessibility of proof, availability of compulsory process, and availability of witnesses require that defendants' motion be granted.
Initially, I believe it is too early in the proceedings to reach that conclusion. The record does not demonstrate that defendants have made any effort to conduct any investigation in Germany into the circumstances surrounding this accident; they merely make the conclusory assertion that any investigation will be ineffective. At the very least, defendants should be compelled to create a factual record that would support that assertion.
It is not without precedent for courts to revisit the issue of forum non conveniens at several stages in a litigation; my colleagues cite two cases in which that very process was utilized. ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse, 652 F.Supp. 1289 (S.D.N.Y.1987); Farmanfarmaian, supra. Such a procedure permits creation of a more fully developed record than that presented to us. We should require more of a defendant before we deny a New Jersey resident the right to sue in New Jersey on breach of warranty and products liability claims based on conduct that occurred in New Jersey.
My colleagues speak of the presumed difficulty in obtaining the testimony of witnesses and cite several cases in which federal courts relied upon that difficulty in granting a motion to dismiss for forum non conveniens. Some of those matters, however, revolved around assessing the credibility of one or two identifiable, crucial witnesses. Mercier v. Sheraton Int'l., Inc., 981 F.2d 1345 (1st Cir.1992), cert. denied, 508 U.S. 912, 113 S.Ct. 2346, 124 L.Ed.2d 255 (1993); ACLI Int'l Commodity Servs., Inc., supra.
On this issue, my colleagues reject out-of-hand the use of video-taped depositions as a possible solution for potential witness problems; they rely upon Gulf Oil Corp., supra, Schertenleib, supra, Kultur Int'l Films Ltd. v. Covent Garden Pioneer, FSP., Ltd., 860 F.Supp. 1055 (D.N.J.1994), and ACLI Int'l Commodity Servs., Inc., supra, for that determination. I consider each these cases distinguishable.
First, in Gulf Oil, the Supreme Court's reference to depositions was to testimony recorded by a court reporter and later transcribed and read to a jury. That is a far cry from a videotaped deposition de bene esse, a technique commonly utilized today at trial. The court in Schertenleib simply recognized that, "[s]ince the crux of this litigation is the truth or falsity of Traum's charges that plaintiff is a swindler, to be able to take the alleged co-conspirators' testimony by letter rogatory only would be a very serious handicap." Schertenleib, supra, 589 F.2d at 1165. In Kultur Int'l. Films, the matter focused on the testimony of one identified witness whose alleged prior representations were considered crucial to the matter but whose live testimony could not be compelled because he resided in England. Similarly, in ACLI, Int'l, four identified witnesses, who resided in Switzerland and were intimately involved in plaintiff's claims of fraud, had refused to submit to pre-trial discovery. As noted earlier, however, defendants have not created a record on this issue.
Plaintiffs' claims against these defendants, moreover, are premised upon products liability and breach of warranty. The evidence relating to those matters is in the United States and, at trial, will largely be presented through the testimony of expert witnesses. The car remains preserved in Germany and *491 will have to be examined by experts regardless of where the trial is conducted. Documents relating to the vehicle's design and production are located here and would be easily accessible for review and use by the parties' respective experts. If the trial were conducted in Germany, however, that material would have to be translated into German before it could be utilized in a German proceeding. Furthermore, plaintiffs' claims of breach of warranty are founded upon alleged misrepresentations made in English in New Jersey. I am unable to perceive why these plaintiffs should be required to have their claims of product defect and breach of warranty considered only after they have been translated from the language in which they originally occurred.
I recognize that if the matter is tried here, defendants will not be able to assert a third-party claim against the Estate of Freda Adler. Ms. Adler was the driver of the vehicle that collided with the Kurzke vehicle; because she died in the accident her testimony will be unavailable irrespective of the forum chosen. Defendants have not demonstrated that they will be precluded at the conclusion of this action from initiating their own claim against the Adler estate in the German courts. While this may not be perfectly satisfactory to defendants, I cannot conclude that the slight, additional, future burden defendants may face is sufficient cause to warrant dismissal of plaintiffs' action.
In truth, there is no perfect forum for the trial of this case. It may be more difficult for defendants if the matter is heard in New Jersey; it may be more difficult for plaintiffs if the matter is heard in Germany. In New Jersey, however, "[t]he general rule in a forum non conveniens analysis favors retention of jurisdiction unless the forum is manifestly inappropriate." American Home Products Corp. v. Adriatic Ins. Co., 286 N.J.Super. 24, 35, 668 A.2d 67 (App.Div.1995). I am unable to conclude on the basis of the record before us that plaintiffs selected their home state as the forum to harass and vex these defendants. Starr v. Berry, 25 N.J. 573, 584, 138 A.2d 44 (1958).
In sum, because my colleagues have given an inappropriate weight to the potential difficulties that may confront these defendants and have accorded plaintiffs' choice of forum insufficient deference, I dissent. I would reverse the order of the trial court and remand the matter for further proceedings.
NOTES
[1] Plaintiffs also sued the Estate of Frieda Adler. That suit is pending in the Munich District Court of Germany. It involves a claim for loss of alimony, or income, and support for April Kurzke and her two sons, Brendan and Kyle Kurzke, until December 31, 1998.
[2] The order entered included the following language:

IT IS FURTHER ORDERED that Defendants shall waive any potential statute of limitations defense under the laws of Germany with respect to plaintiffs' claims asserted in this action; and
IT IS FURTHER ORDERED that Defendants shall consent to personal jurisdiction of the Courts of Germany with respect to plaintiffs' claims asserted in this action and shall not use the fact that they are entities incorporated and located in the United States as a legal objection to defendants being deposed in the German action.
[3] E.g., Mercier v. Sheraton Int'l, 981 F.2d 1345, 1356 (1st Cir. 1992), cert. denied, 508 U.S. 912, 113 S.Ct. 2346, 124 L.Ed.2d 255 (1993) (holding that the unavailability, absent compulsory process, of a witness would result in "serious injustice," thus was a sufficient factor in granting the forum non conveniens motion); Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd., 918 F.2d 1446, 1451 (9th Cir.1990) (explaining that because defendant "cannot compel these [foreign] witnesses to appear before U.S. courts, [his] defense and trial preparation could suffer some impediment if the U.S. courts were to retain control of [the] litigation"); Camejo v. Ocean Drilling & Exploration, 838 F.2d 1374, 1380 (5th Cir.1988) (citing fact that "[c]ompulsory process for [foreign] witnesses is unavailable in [chosen] forum" as a factor militating district court's decision not to exercise its jurisdiction); de Melo v. Lederle Labs., 801 F.2d 1058, 1063 (8th Cir.1986) (finding fact that litigation in the United States would deprive defendant of compulsory process to be of "considerable importance" in dismissing the case); Farmanfarmaian v. Gulf Oil Corp., 588 F.2d 880, 881 (2d Cir.1978) (quoting district court opinion, that "major witnesses ... [will] most like come from" a foreign country "weigh[s] heavily" in favor of declining jurisdiction on forum non conveniens grounds).
[4] E.g., Allstate Life Ins., Co. v. Linter Group Ltd., 994 F.2d 996, 1001 (2d Cir.), cert. denied, 510 U.S. 945, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993) (affirming the dismissal on a forum non conveniens motion because if defendant were forced to litigate in the United States, it would not be able to implead a party from whom it could seek contribution and indemnification); Empresa Lineas Maritimas Argentinas v. Schichau-Unterweser, 955 F.2d 368, 374 (5th Cir.1992) (confirming the district court's consideration of defendants "inability to implead" a potential third-party defendant as an important private interest factor); Reid-Walen v. Hansen, 933 F.2d 1390, 1398 (8th Cir.1991) (denying dismissal on forum non conveniens because defendant's assertions were a "hypothetical discussion about the efficiency of third-party practice" and did not allege their defense would be greatly impaired without the ability to implead); Ludgate Indus. Co. Ltd. v. Becker, 906 F.Supp. 1233, 1240 (N.D.Ill.1995) (denying forum non conveniens motion because, while recognizing the inability to implead a party is a serious consideration, there was "little merit" to defendant's contention it would implead a third-party); Penwest Dev. Corp. v. Dow Chem. Co., 667 F.Supp. 436, 440 (E.D.Mich.1987) (dismissing action on basis of forum non conveniens because defendant would be unable to implead third-party defendants); Jennings v. Boeing Co., 677 F.Supp. 803, 804 (E.D.Pa.1987) (granting defendant's motion to dismiss for forum non conveniens because defendant would be unable to implead potential third-party defendants), order aff'd, 838 F.2d 1206 (3d Cir.1988); In re Disaster at Riyadh Airport, 540 F.Supp. 1141, 1150 (D.D.C.1982) (granting motion to dismiss for forum non conveniens because inability to implead would create "practical problems").
[1] In several of the cases my colleagues cite, for instance, defendants agreed that if the matter was dismissed for reasons of forum non conveniens, they would not dispute liability. Pain v. United Technologies Corp., 637 F.2d 775 (D.C.Cir.1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981); Jennings v. Boeing Co., 677 F.Supp. 803 (E.D.Pa.1987), aff'd, 838 F.2d 1206 (3rd Cir.1988); In re Disaster at Riyadh Airport, 540 F.Supp. 1141 (D.D.C.1982). These defendants make no such concession.
[2] That report identifies the witness by name and also names the driver of another vehicle who only barely managed to avoid the Adler car. It also identifies the rescue companies who responded to the scene and tried, unsuccessfully, to save Hartmut Kurzke.