598 A.2d 847

Jason Chabot **LENNOX**

v.

**Simean Gallis MULL.**

No. 118, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Dec. 4, 1991.

**556**

William E. Moore of Rehoboth Beach, Del. and Edith H. Hull–Johnson, Millsboro, Del., for appellant.

James P. Donahue, Jr., Anderson, Rudd & Donahue, Cumberland, for appellee.

Submitted before WILNER, C.J., and MOYLAN and FISCHER, JJ.

WILNER, Chief Judge.

This is a custody dispute. The issue before us, however, is not who should prevail but simply where the case should be tried—in Allegany or in Worcester County. It is an

issue that is not properly before us and so we cannot address it.

In April, 1985, appellee, then bearing the name Simean Lennox, filed suit in the Circuit Court for Allegany County seeking a limited divorce from appellant and immediate custody of their minor child, Cierra. She claimed that appellant had forced her to leave the marital home in Allegany County without the child and that she was then living in Pennsylvania. Appellant answered the complaint and filed one of his own, also seeking a limited divorce and custody of Cierra. Custody, *pendente lite*, was awarded to Simean.

After a year of squabbling, the parties entered into an agreement, memorialized in a Consent Decree, under which appellee was to have custody of Cierra, subject to specified visitation with appellant. That amicable arrangement lasted only about 18 months, however. In September, 1986, appellant petitioned for custody, claiming that Simean was living with an unrelated adult male. After an evidentiary hearing, the court, in November, 1987, found an insufficient change in circumstances since the last hearing to support a modification of custody and therefore denied appellant's request. In that same order, the court entered a decree of absolute divorce.

In September, 1989, appellant again sought custody of Cierra on the basis of a change in circumstances in both his life and that of Simean. At his request, the court, on March 19, 1990, appointed an attorney for Cierra and directed that the attorney report to the court by April 30, 1990.[1] No such report was made within that time, and the matter remained open on the docket.

On September 6, 1990, appellant, who in the meanwhile had moved from Frostburg, in Allegany County, to Public Landing, in Worcester County, filed (1) a petition in the

---

1. In subsequent pleadings, the attorney is sometimes referred to as a guardian *ad litem,* although the order of appointment makes clear that he was to act as attorney for the child.

Circuit Court for Worcester County for emergency custody of Cierra and for the appointment of a guardian *ad litem* for the child, (2) a petition in the Circuit Court for Allegany County for change of venue to Worcester County and for the discharge of the attorney, and (3) a request that Judge Sharer, who had conducted all or most of the earlier proceedings in the case, recuse himself. In his petition for change of venue, appellant claimed that many of his witnesses would be from the Worcester County area and that it would be a hardship on them to travel to Allegany County, whereas appellee's witnesses from Pennsylvania were about equidistant from Allegany and Worcester Counties and therefore would not be inconvenienced by the transfer. Although appellant neglected to cite any authority to support his request, it is clear that he was invoking the court's authority under Md. Rule 2–327(c) to "transfer any action to any other circuit court where the action might have been brought if the transfer is for the convenience of the parties and witnesses and serves the interests of justice."

Appellee not only opposed the petition to transfer but filed her own petition in the Allegany County court to hold appellant in contempt for his refusal to return Cierra to appellee following the child's summer visit with appellant. The attorney for the child then filed a request to be discharged, contending he could not make a recommendation without first interviewing Cierra in the presence of appellee and that appellant refused to release the child for that purpose.

Judge Sharer granted the motion to recuse himself and appointed Judge Thayer to hear the petition.

In October, 1990, the child's attorney filed an interim report with the court. He noted that, with appellee's consent, Cierra had spent the summer with appellant in Worcester County but that the parties disagreed as to the nature of that consent. Appellant claimed that appellee had, in fact, relinquished custody of Cierra, that he had therefore enrolled her in school in Worcester County, but

that appellee then changed her mind. Appellee, on the other hand, contended that Cierra was there merely on a summer visit and was to be returned to Pennsylvania in July. Appellee had filed criminal charges against appellant in Worcester County for child abduction.

On November 13, 1990, after a hearing, Judge Thayer denied the petition for change of venue. He concluded that (1) Cierra had "virtually no contact with Worcester County," but was there essentially "on an extended visit," (2) there was a long history of the case in Allegany County, (3) if the case remained in Allegany County, appellant's witnesses "will have, perhaps, a little further to travel than will [appellee's] witnesses," and (4) "the only thing in favor, on balance, of Worcester County is the distance and I believe that it is not sufficient to overcome the other contacts, limited at this point though they may be, established in Allegany County." Judge Thayer also decided not to remove the child's attorney.

Appellant appealed Judge Thayer's denial of his motion for change of venue. Appellee has moved to dismiss the appeal, contending that the order, being interlocutory in nature, is not presently appealable. In response, appellant urges that the order (1) is appealable as a final judgment, and (2) if not, is appealable under the collateral order doctrine. In our view, it is neither.

In support of his first proposition, appellant cites *Greenberg v. Dunn*, 245 Md. 651, 227 A.2d 242 (1967) and *Ezersky v. Ezersky*, 40 Md.App. 713, 394 A.2d 1225 (1978). Those cases, however, are inapposite.

*Greenberg v. Dunn* addressed briefly (because the appellee eventually conceded the point) whether an order removing an action from one court to another pursuant to Article IV, § 8 of the Maryland Constitution was appealable, and the Court concluded that it was, citing three earlier cases. That holding followed a long line of cases dealing with orders either removing or refusing to remove cases under that section of the Constitution. Article IV, § 8 requires a

trial court to remove certain kinds of cases upon a suggestion that a party cannot get a fair trial in that court. If the condition for removal is satisfied, there is no discretion to deny the request. The Court of Appeals took the view, as expressed in *Griffin v. Leslie*, 20 Md. 15, 19 (1863), that orders denying removal were unlike ordinary rulings on motions that could not be appealed prior to entry of final judgment because "the refusal of the application for removal does finally settle a constitutional right of the party, the exercise of which, when demanded, is essential to the impartial administration of justice and should not be withheld or postponed." *See also McMillan v. State*, 68 Md. 307, 12 A. 8 (1888) and *Elliott v. Larrimore*, 203 Md. 526, 528, 101 A.2d 817 (1954): "It is established that where the right is absolute an order granting or denying a suggestion of removal is an appealable order."

 There are two reasons why these cases and the principle applied in them are inapposite. First, transfer of a case on the ground of *forum non conveniens* is not a constitutional right but is discretionary with the court, and, on that ground alone, there is no analogy with the removal cases. Second, in *Parrott v. State*, 301 Md. 411, 483 A.2d 68 (1984), the Court abandoned the notion that an immediate appeal could be taken from any order denying a constitutional right and instead required that such an order, to be immediately appealable, either constitute a final judgment or fall within the collateral order doctrine. *See also Stewart v. State*, 282 Md. 557, 386 A.2d 1206 (1978). The focus returns, then, to whether an order denying a transfer under Md. Rule 2–327(c) either constitutes a final judgment or is appealable under the collateral order doctrine.

Until 1973, there was no general provision in the Maryland Rules or practice for the transfer of cases from one court to another on venue grounds. The power of a court to transfer a pending case derived from three sources— common law, Article IV, § 8 of the Maryland Constitution, and statute.

The common law authority was noted in *Cooke v. Cooke,* 41 Md. 362, 366 (1875): "The power of the courts to remove a cause to an adjoining county for trial, when justice required it, existed at common law as an acknowledged, if not an essential part of their ordinary common law jurisdiction." Because the Constitutional removal provision was added early in the State's history, by an 1805 amendment to the 1776 Constitution, there has been little discussion of the antecedent common law authority.[2] In *Negro Jerry ·v. Townshend,* 2 Md. 274, 278 (1852), the Court suggested that this common law right or authority was like "[a]ll laws for the removal of causes from one vicinage to another, [which] were passed for the purpose of promoting the ends of justice by getting rid of the influence of some local prejudice which might be supposed to operate detrimentally to the interests and rights of one or the other of the parties to the suit." There is no indication that it operated to allow transfers solely for the convenience of parties or witnesses or because of improper venue.

The Constitutional provision, as noted, was similarly limited. It conditioned removal upon a suggestion that a fair trial could not be obtained in the original court, and, for that reason, was held not to apply to equity cases, in which the Court presumed the parties could always get a fair trial. *Cooke v. Cooke, supra,* 41 Md. at 371. The statutory authority to remove cases, which also dates back to 1805, was intended to implement the Constitutional provision. It was extended in scope over time and eventually was made applicable to equity cases, but, like the Constitutional counterpart, it was available only where a party complained that

---

**2.** The 1805 amendment, proposed by 1804 Md. Laws, ch. 55, abolished the General Court, divided the State into six judicial districts, created County Courts to exercise general trial jurisdiction within the various counties, and provided for the transfer of any "suit or action at law" from one County Court to another such court within the judicial district upon a suggestion in writing supported by affidavit or other evidence that a fair and impartial trial could not be had in the court where the action was pending.

he could not get a fair and impartial trial. *See* Md.Code (1957), art. 75, § 44.

Because of the limited scope of these common law, organic, and statutory provisions, there was no ability to save a case brought in a court without proper venue. If a successful attack on the court's venue was made, the result was dismissal. The plaintiff could, of course, file a new action in a court having proper venue, but, until *Bertonazzi v. Hillman, Admx,* 241 Md. 361, 216 A.2d 723 (1966), he had to make sure that the new action was filed within the applicable period of limitations.

In a more comprehensive effort to save cases subject to attack on venue grounds, the Court of Appeals, in 1973, adopted Md. Rule 317, providing that, "[t]he court in which an action is filed laying venue in the wrong county shall, upon timely and sufficient objection to the venue, dismiss the action or, if it be in the interest of justice, transfer it to any county in which it could be brought." That rule received very little appellate construction. Because the stated basis for a transfer was that the action was filed "in the wrong county," it would appear to have been limited to the situation where there was indeed an actual lack of venue and the case could not validly proceed in the original court. Its wording does not suggest, in other words, that a transfer could be made solely on a *forum non conveniens* basis. This would seem to be confirmed by the Court's felt need in 1984 to add to that provision (now codified as Md. Rule 2–327(b)) Rule 2–327(c), specifically allowing a transfer for the convenience of parties and witnesses.

In *Wilde v. Swanson,* 314 Md. 80, 86, 548 A.2d 837 (1988), the Court held that an order *dismissing* an action for lack of venue is appealable as a final judgment. In a footnote to that holding, at 87, 548 A.2d 837, the Court noted Rule 2–327(c) and stated, "[w]e note that the instant case involves a dismissal of a party and not a transfer of the entire action. We intimate no opinion on the finality of orders of transfer of the entire action."

Md. Rule 2–327(c) was derived from a Federal statute—28 U.S.C. § 1404(a). *See* Source Note to Rule 2–327. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The nearly universal rule in the Federal system is that, while orders entered under § 1404(a) may be reviewable on a very limited basis by mandamus, they are not appealable. *See Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (1st Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977); *Ackert v. Pelt Bryan*, 299 F.2d 65 (2d Cir.1962); *Ellicott Machine Corporation v. Modern Welding Co., Inc.*, 502 F.2d 178 (4th Cir.1974); *Auerbach v. United States*, 347 F.2d 742 (5th Cir.), *cert. denied*, 382 U.S. 958, 86 S.Ct. 434, 15 L.Ed.2d 362 (1965); *Chicago, R.I. & P.R. Co. v. Igoe*, 212 F.2d 378 (7th Cir.1954); *Pacific Car and Foundry Company v. Pence*, 403 F.2d 949 (9th Cir.1968).

■ We see no reason to adopt a different view with respect to our analog to § 1404(a), especially where the order denies a transfer. Clearly, the order in question does not constitute a final judgment. The case is very much alive in Allegany County. Nor, in our view, does it qualify as an appealable collateral order.

■ The collateral order doctrine is "narrow in scope." *Peat & Co. v. Los Angeles Rams*, 284 Md. 86, 92, 394 A.2d 801 (1978). To come within it, the order must meet four requirements: it must conclusively determine the disputed question, resolve an important issue, be completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment. *Id. See also Clark v. Elza*, 286 Md. 208, 213, 406 A.2d 922 (1979). The order in question is not effectively unreviewable on appeal from a final judgment. The decision to transfer or not transfer under Rule 2–327(c) is a discretionary one and is thus reviewable on an abuse of discretion standard. It may well be, as appellant complains, that, if we do not reach this

issue now he will have to try his case in an inconvenient forum and that, if we ultimately were to conclude that Judge Thayer abused his discretion in not transferring the case to Worcester County, the matter may have to be retried. But that has to be balanced against two other factors: one, that if appellant were to prevail in Allegany County, the issue of transfer will become moot and will never have to be decided on appeal; and, two, the inconvenience to the parties, both trial courts, and this Court of interrupting all proceedings below for upwards of a year to consider what is clearly a discretionary and interlocutory decision. Unfortunately, that has been the result in this case because of this appeal, but we do not desire to establish a rule that will allow it to happen in the future.

It is for these reasons that we conclude that the order denying appellant's petition for change of venue is not immediately appealable and that we therefore dismiss the appeal.

APPEAL DISMISSED; APPELLANT TO PAY THE COSTS.