752 A.2d 708

APRIL M. KURZKE, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF HARTMUT KURZKE AND BRENDAN KURZKE, AN INFANT BY HIS GUARDIAN AD LITEM, APRIL M. KURZKE, PLAINTIFFS–APPELLANTS, v. NISSAN MOTOR CORPORATION IN U.S.A., NISSAN RESEARCH AND DEVELOPMENT, FORD MOTOR COMPANY, INC., AND BRISTOL MOTORS, INC., DEFENDANTS–RESPONDENTS,JOHN DOES (1–10), FICTITIOUS NAMES, AND ABC CORPORATIONS (1–8), FICTITIOUS NAMES, DEFENDANTS.

Argued February 28, 2000—Decided June 15, 2000.

*Peter L. Korn* argued the cause for appellants (*McDonough, Korn & Eichhorn,* attorneys; *R. Scott Eichhorn* and *Danielle M. Verrastro,* on the brief).

*Gerard Cedrone* argued the cause for respondents (*Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray,* attorneys; *Jo E. Peifer,* on the brief).

The opinion of the Court was delivered by

VERNIERO, J.

We are called on in this appeal to decide whether plaintiffs' action should be dismissed on the basis of the doctrine of *forum non conveniens.* That doctrine is equitable in nature and allows a court to decline jurisdiction when it would be inappropriate to try the case in the forum selected by the plaintiff. We also address when in the litigation a party should properly move to dismiss an action on that basis.

Following a fatal automobile accident, plaintiffs brought suit in Middlesex County asserting products liability and breach of warranty claims, relating to an allegedly defective steering column in their minivan. The vehicle and steering column were designed and manufactured in the United States, and plaintiffs purchased the vehicle in New Jersey from a New Jersey corporation. The accident around which this case centers, however, occurred in Germany. Defendants successfully argued to the courts below that Germany was the more appropriate forum in which to resolve the litigation. We disagree based on the record presented and, therefore, reverse.

I.

We describe plaintiffs' version of the facts, intimating no view concerning what the evidence at trial might show. In November 1992, April Kurzke and her husband, Hartmut Kurzke, were living in Warren, New Jersey, with no intention of leaving the State. (When they filed suit, plaintiffs resided in Edison.) The Kurzkes wanted to purchase a minivan to replace their Nissan Maxima, which they had purchased in 1990. On November 23, 1992, the Kurzkes went to Bristol Motors Company in North Plainfield, New Jersey, and asked to speak to the same salesperson who had sold them their Maxima. The Kurzkes were considering purchasing a 1993 Nissan Quest; however, they were concerned about the safety of that vehicle.

Specifically, the Kurzkes told the salesperson they were concerned that the Nissan Quest was not equipped with an air bag

and, therefore, they were considering purchasing a competitor's vehicle that had such a safety device. The salesperson reassured the Kurzkes, telling them that although the Quest did not have an air bag, it did have a collapsible steering column, which, in a collision, effectively would function like an air bag. The salesperson showed the Kurzkes a Nissan advertisement confirming that the Quest had an "[e]nergy-absorbing steering column [which] collapses upon impact to help reduce the risk of injury." Relying on those assurances, the Kurzkes purchased the Nissan Quest.

In 1993, Hartmut Kurzke's employer offered him a transfer to Germany. Hartmut accepted the position with the expectation of living in Germany for four or five years and then returning to New Jersey to assume an administrative position in his employer's New Jersey headquarters. Hartmut arrived in Germany in August 1994, and April and the Kurzkes' two children joined him soon thereafter. The Kurzkes had their Nissan Quest shipped to them overseas.

On August 14, 1995, Hartmut was driving the Nissan Quest on the Autobahn near Olpe, Germany. April and Brendan, the Kurzkes' four-year-old son, were passengers. The Kurzkes were on a section of the Autobahn undergoing construction when a vehicle driven in the opposite direction by Frieda Adler unexpectedly crossed into the Kurzkes' lane. Adler's vehicle (a Volkswagen Golf) hit another vehicle before striking the Kurzkes' Nissan Quest.

Adler was pronounced dead at the scene. Hartmut, though conscious, was trapped and compressed between the seatback and the steering column for nearly two hours before he died. April and Brendan escaped serious injury but observed Hartmut's slow and painful death. Plaintiffs submitted an expert's report that concludes that the steering column was defectively designed and failed to collapse. Plaintiffs' expert also expressed the view that Hartmut could have survived the accident had it not been for the defective steering column, which crushed Hartmut's chest and lungs.

April Kurzke, individually and as a representative of the Estate of Hartmut Kurzke, and Brendan Kurzke, by his guardian *ad litem*, instituted this action in the Law Division on March 6, 1997, alleging that the steering column was defectively designed and that its failure to collapse was in breach of the warranties that they had received. Plaintiffs also instituted a negligence action against Adler's estate in the Munich District Court of Germany. That action is pending.

During the early stages of the litigation, defendants moved to dismiss the New Jersey action on the basis of *forum non conveniens*. Following written submissions and oral argument, the trial court granted defendants' motion and dismissed the complaint. The court also ordered defendants to waive statute of limitations defenses and jurisdictional objections to enable the action to be tried in Germany.

Plaintiffs appealed to the Appellate Division. In a reported opinion, that court affirmed the trial court's order dismissing plaintiffs' complaint. *Kurzke v. Nissan Motor Corp.*, 320 *N.J.Super.* 386, 727 *A.*2d 481 (App.Div.1999). One member of the panel, Judge Wefing, dissented. Plaintiffs appealed to this Court as of right pursuant to *Rule* 2:2–1(a)(2).

## II.

The doctrine of *forum non conveniens* "is firmly embedded in the common law of this State." *Civic Southern Factors Corp. v. Bonat*, 65 *N.J.* 329, 332, 322 *A.*2d 436 (1974). The precise origins of the doctrine are obscure; the term appeared in early Scottish practice and was invoked by courts declining to exercise jurisdiction when justice required that an alternative forum be used. *Gore v. United States Steel Corp.*, 15 *N.J.* 301, 305, 104 *A.*2d 670, *cert. denied*, 348 *U.S.* 861, 75 *S.Ct.* 84, 99 *L.Ed.* 678 (1954). "Although phrased in a variety of ways, the essence of the doctrine is that a court may decline jurisdiction whenever the ends of justice indicate a trial in the forum selected by the plaintiff would be inappropriate." *D'Agostino v. Johnson & Johnson, Inc.*,

225 *N.J.Super.* 250, 259, 542 *A.*2d 44 (App.Div.1988), *aff'd,* 115 *N.J.* 491, 559 *A.*2d 420 (1989). Justice Frankfurter referred to the doctrine as a manifestation of a "civilized judicial system." *Baltimore and Ohio R.R. Co. v. Kepner,* 314 *U.S.* 44, 55, 62 *S.Ct.* 6, 11, 86 *L.Ed.* 28, 34 (1941).

The doctrine is equitable in nature and, therefore, decisions concerning its application ordinarily are left to the sound discretion of the trial court. *Civic Southern Factors Corp., supra,* 65 *N.J.* at 333, 322 *A.*2d 436. "An appellate court should not substitute its judgment for that of the trial judge unless there is a showing of clear abuse of that discretion." *Ibid.* Although subject to the court's discretion, no court is compelled constitutionally or otherwise to grant a motion for dismissal based on *forum non conveniens. Lennox v. Mull,* 89 *Md.App.* 555, 598 *A.*2d 847, 849 (1991) ("[T]ransfer of a case on the ground of *forum non conveniens* is not a constitutional right but is discretionary with the court[.]").

In reviewing motions for dismissal based on *forum non conveniens,* this Court previously has cited certain factors set forth in the United States Supreme Court's seminal case on the subject, *Gulf Oil Corp. v. Gilbert,* 330 *U.S.* 501, 508–09, 67 *S.Ct.* 839, 843, 91 *L.Ed.* 1055, 1062–63 (1947). *Gore, supra,* 15 *N.J.* at 306, 104 *A.*2d 670 (calling treatment of the issue in *Gulf Oil* "persuasive"). In *D'Agostino v. Johnson & Johnson, Inc.,* 115 *N.J.* 491, 494–95, 559 *A.*2d 420 (1989), we reaffirmed the *Gulf Oil* factors as providing the proper analytical framework to aid courts in deciding whether the plaintiff's choice of forum is appropriate. Those factors include both public-interest and private-interest elements. The public-interest factors are:

> (1) the administrative difficulties which follow from having litigation pile up in congested centers rather than being handled at its origin, (2) the imposition of jury duty on members of a community having no relation to the litigation, (3) the local interest in the subject matter such that affected members of the community may wish to view the trial and (4) the local interest in having localized controversies decided at home.
>
> [*D'Agostino, supra,* 225 *N.J.Super.* at 263, 542 *A.*2d 44 (quotation marks omitted) (quoting *Gulf Oil, supra,* 330 *U.S.* at 508–09, 67 *S.Ct.* at 843, 91 *L.Ed.* at 1062–63).]

The private-interest factors are:

(1) the relative ease of access to sources of proof, (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses, (3) whether a view of the premises is appropriate to the action and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive, including the enforceability of the ultimate judgment.

[*Ibid.* (quotation marks omitted) (quoting *Gulf Oil, supra,* 330 *U.S.* at 508–09, 67 *S.Ct.* at 843, 91 *L.Ed.* at 1062–63).]

In this case, the trial court engaged in a weighing of the *Gulf Oil* factors, concluding that New Jersey was not the proper forum for plaintiffs' suit. The court accepted defendants' contention that discovery of documents and witnesses would be severely hampered if the case were tried here. In so doing, the court emphasized the fact that all of the witnesses to the crash and its aftermath, including emergency personnel who responded, live in Germany and that all of Hartmut's medical records are there. The court buttressed its conclusion by noting that the accident occurred in Germany and by indicating its belief that the factfinder might need to view the crash site. The court observed that the Nissan Quest itself is in Germany, and that it would be easier to examine the vehicle were the trial held in that country.

The Appellate Division affirmed the dismissal, concluding that although the public-interest factors strongly favored retaining the litigation in New Jersey, the private-interest factors weighed more heavily in favor of resolving the litigation in Germany. *Kurzke, supra,* 320 *N.J.Super.* at 396, 400, 727 *A.*2d 481. For the reasons that follow, we believe that the balancing process employed by the trial court, although diligent, was premature and, therefore, an abuse of its discretion.

Defendants' arguments concerning the difficulty of obtaining discovery and the testimony of witnesses are largely unsubstantiated. At oral argument, for example, counsel for defendants acknowledged that they have attempted no discovery to date. Apparently, defendants have not sought to contact any witness

important to their defense, nor were they able to assure us that any such witness would not testify voluntarily in New Jersey. According to counsel, defendants "made a decision to file the motion and ... did not go any further." Conversely, counsel for plaintiffs represented that they have provided defendants with translated copies of all the documents they have in their possession. In short, defendants have not persuaded us that those documents are inadequate or that other required discovery is unavailable.

Although we do not doubt that defendants' forecasts about the hardships they foresee are made in good faith, we remain unconvinced that a firm conclusion in respect of such difficulties can be reached so easily, so early in the litigation. We thus agree with Judge Wefing that

> it is too early in the proceedings to reach th[e] conclusion [that the private factors require that defendants' motion be granted]. The record does not demonstrate that defendants have made any effort to conduct any investigation in Germany into the circumstances surrounding this accident; they merely make the conclusory assertion that any investigation will be ineffective. At the very least, defendants should be compelled to create a factual record that would support that assertion. It is not without precedent for courts to revisit the issue of *forum non conveniens* at several stages in a litigation.... Such a procedure permits creation of a more fully developed record than that presented to us. We should require more of a defendant before we deny a New Jersey resident the right to sue in New Jersey on breach of warranty and products liability claims based on conduct that occurred in New Jersey.
>
> [*Id.* at 402–03, 727 *A*.2d 481 (Wefing, J.A.D., dissenting).]

Defendants correctly point out that current law is unclear concerning when a motion for dismissal for *forum non conveniens* should be entertained. We have previously suggested, without stating explicitly, that to grant a dismissal when discovery has not yet commenced or is in its early stages is premature. *D'Agostino, supra,* 115 *N.J.* at 494 n. 1, 559 *A*.2d 420 (noting that "[i]t is apparent that a trial court's disposition of a *forum non conveniens* motion would be enhanced ... if decision were reserved until discovery has proceeded sufficiently to enable the court to make a better-informed assessment of the private- and public-interest factors").

■ Today, we address the timing issue explicitly. As a general rule, a motion for dismissal due to *forum non conveniens* should not be heard unless the movant has made a good faith effort to obtain discovery and can provide the court with a record verifying that discovery is unreasonably inadequate for litigating in the forum chosen by the plaintiff. *Ibid.* Mere speculation about potential inadequacies ordinarily is not a sufficient basis to deny the plaintiff the choice of forum. *Ibid.* We leave open the possibility that, in a limited number of cases, the burden to a defendant will be so grossly unfair and obvious on the face of the pleadings that discovery will not be necessary to validate a motion for *forum non conveniens.* That is not the case here.

■ By the same token, *forum non conveniens* questions should not be deemed waived by a defendant's failure to raise them immediately. *Cf. R.* 4:6–7 (specifying condition by which personal jurisdiction objection, but not *forum non conveniens,* will be deemed waived). Instead, parties must have the opportunity to demonstrate that they have attempted to obtain the discovery necessary to defend an action and prove to the trial court's satisfaction that the plaintiff's choice of forum is truly inappropriate. Conversely, there may come a point when the litigation is well advanced, at which time a dismissal would impose heavy costs on the plaintiff. Such a late dismissal should be avoided.

■ On balance, we agree with the approach described by the Third and Fifth Circuits:

"[A] defendant must assert a motion to dismiss for *forum non conveniens* within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonably knowable to the defendant. While untimeliness will not effect a waiver, it should weigh heavily against the granting of the motion because a defendant's dilatoriness promotes and allows the very incurrence of costs and inconvenience the doctrine is meant to relieve." [*Lacey v. Cessna Aircraft Co.,* 932 *F.*2d 170, 177 (3d Cir.1991) (quoting *In re Air Crash Near New Orleans,* 821 *F.*2d 1147, 1165 (5th Cir.1987), *vacated on other grounds sub nom., Pan American World Airways, Inc. v. Lopez,* 490 *U.S.* 1032, 109 *S.Ct.* 1928, 104 *L.Ed.*2d 400 (1989)).]

Thus, a motion to dismiss for *forum non conveniens* may be improper because it has been filed too early or too late in the

process. We leave it to the sound discretion of trial courts to decide, on a case-by-case basis, when such a motion must be foreclosed on timeliness grounds, consistent with the broad outlines expressed above.

## III.

Although the lack of discovery makes any balancing inconclusive and premature, we offer as guidance our own view that the public- and private-interest factors do not, on the present record, indicate that New Jersey is an inappropriate forum for plaintiffs' suit. We do not intend the following analysis to be exhaustive; it is merely illustrative.

New Jersey has an undeniable, vital interest in assuring the safety of automobiles bought and sold here. So, too, does this State have a compelling interest in assuring that representations made to its consumers are truthful. Thus, it is appropriate to involve the State's judiciary, including the imposition of jury duty on New Jersey citizens, for the purpose of resolving this litigation. Briefly stated, we agree with the Appellate Division's conclusion that "if the public interest factors stood alone, there would be no doubt that New Jersey is an appropriate forum." *Kurzke, supra,* 320 *N.J.Super.* at 396, 727 *A.*2d 481.

Moreover, we are not at all certain that the private-interest factors weigh so heavily in favor of litigating this case in Germany. Plaintiffs, who speak only English, are New Jersey citizens who purchased an allegedly defective vehicle in New Jersey, with the intention of using the vehicle in New Jersey only. The vehicle was purchased from a New Jersey corporation (Bristol Motors), in reliance on representations made in New Jersey, in English, from a New Jersey salesperson. The vehicle was designed and manufactured in the United States. Thus, most of the acts that form the basis of plaintiffs' claims occurred in this country, not in Germany. Accordingly, at this juncture it appears to us that much of the evidence in this case will come from individuals and companies in the United States.

Additionally, if the case were tried in Germany, plaintiffs would be required to produce their many witnesses overseas; obtain translations of all the technical documents relating to the design and testing of the Nissan Quest and its steering column, including any crash-test videos, design specifications, and the like; and arrange for translation of the testimony of the parties who can substantiate plaintiffs' claims regarding the warranties they allegedly received. Moreover, German counsel would have to be retained to conduct the litigation. In sum, the difficulties plaintiffs would face by being forced to litigate in Germany may prove prohibitive.

That defendants will face insurmountable problems by trying the case in New Jersey also is not apparent. We have noted already that defendants have attempted no discovery to date. We add that Hartmut Kurzke died on a section of the Autobahn undergoing construction, and the scene has surely changed since then. To what extent that a view of the scene as it exists today would be relevant or helpful to a jury resolving this litigation is unclear.

Nor must the inability to implead the Adler estate be dispositive. We have been presented with no compelling reason why defendants could not preserve the right to seek indemnification from the estate following plaintiffs' trial. *Id.* at 404, 727 *A.*2d 481 (Wefing, J.A.D., dissenting). Alternatively, the trial court in New Jersey may be asked to take into account the responsibility of Ms. Adler or any other partially-responsible party. *Young v. Latta,* 123 *N.J.* 584, 586, 589 *A.*2d 1020 (1991).

In addition to weighing the relative burdens to the parties, we must give sufficient regard to "the principle that plaintiff's choice may not be defeated upon a mere balance of conveniences." *D'Agostino, supra,* 225 *N.J.Super.* at 262, 542 *A.*2d 44. As we observed in another setting, " 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' " *Gore, supra,* 15 *N.J.* at 306, 104 *A.*2d 670

(quoting *Gulf Oil, supra,* 330 *U.S.* at 508, 67 *S.Ct.* at 843, 91 *L.Ed.* 1055).

■■ New Jersey courts should be especially accommodating to their own citizens seeking justice at home. "[A]n action by or against a resident will ordinarily not be dismissed as being in an inconvenient forum...." *Id.* at 311, 104 *A.2d* 670. Although domestic residence is not decisive, "there is a strong presumption in favor of retaining jurisdiction where the plaintiff is a resident who has chosen his [or her] home forum. A nonresident's choice of forum is entitled to substantially less deference." *D'Agostino, supra,* 225 *N.J.Super.* at 262, 542 *A.2d* 44 (citation omitted). The United States Supreme Court has explained that "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable." *Piper Aircraft Co. v. Reyno,* 454 *U.S.* 235, 255–56, 102 *S.Ct.* 252, 266, 70 *L.Ed.2d* 419 (1981).

Plaintiffs were New Jersey residents when they purchased their minivan in New Jersey, and they maintain their New Jersey home today. Their residence in Germany is temporary and Brendan attends an American school in anticipation of his return to the United States. Thus, plaintiffs' case is noticeably unlike one in which foreign plaintiffs with few or no ties to New Jersey institute an action in this State to avail themselves of our substantive laws. *Id.* at 266, 102 *S.Ct.* at 255–56, 70 *L.Ed.2d* 419.

■■ As the Appellate Division correctly observed, "there will be witness inconvenience to one extent or another regardless of whether this case is tried here or in Germany." *Kurzke, supra,* 320 *N.J.Super.* at 397, 727 *A.2d* 481. When an alternative forum would present as many obstacles as does the forum chosen by the plaintiffs, which appears to be true in this case, a dismissal should not be granted. *D'Agostino, supra,* 115 *N.J.* at 494, 559 *A.2d* 420.

## IV.

■■ We reiterate that, in the final analysis, to dismiss on the basis of *forum non conveniens,* the choice of forum must be

"demonstrably inappropriate." *D'Agostino, supra*, 225 *N.J.Super.* at 262, 542 *A.*2d 44. For the reasons stated, we hold that it was premature for the trial court to conclude that defendants have satisfied that standard. Although the factors set forth in *Gulf Oil* are of central importance, pre-discovery is ordinarily an inappropriate point in the litigation at which to consider them. Even when we do consider the factors on this record, at best they show that defendants' alternative forum would present as many obstacles as the one chosen by plaintiffs. Such a showing is insufficient to overcome the presumption in favor of the forum selected by these resident plaintiffs.

We acknowledge the challenge to trial courts in managing difficult, international actions. Nonetheless, we are confident that our courts in New Jersey are equal to the task. The temptation to dismiss for *forum non conveniens* may be greatest when a suit is difficult and complex. At those times, however, courts must be most vigilant to make certain the plaintiff's choice of forum is demonstrably inappropriate before granting a dismissal.

V.

The judgment of the Appellate Division is reversed and the matter is remanded to the trial court for further proceedings.

*For reversal and remandment*—Chief Justice PORITZ and Justices O'HERN, STEIN, COLEMAN, VERNIERO and LaVECCHIA—6.

*Opposed*—None.