948 A.2d 673 (2008)
400 N.J. Super. 508
Francisco Varo VARO and Carmen Herrera Laynez, h/w, Plaintiffs-Appellants,
v.
OWENS-ILLINOIS, INC., Defendant-Respondent.
Manuel Alcedo Martin Bejarano and Mercedes Garcia Delgado, h/w, Plaintiffs-Appellants,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Manuel Fuentes Bejarano, Plaintiff-Appellant,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Antonio Marquez Laynez and Maria Carmen Merino Salas, h/w, Plaintiffs-Appellants,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Eleuterio Perez Laynez and Josefa Bernal Santos, h/w, Plaintiffs-Appellants,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Francisco Caraballo Avalo and Josefa Montesinos Sampalo, h/w, Plaintiffs-Appellants,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Gregorio Cabello Mancheno and Natividad Berenguer Pisones, h/w, Plaintiffs-Appellants,
v.
Owens-Illinois, Inc., Defendant-Respondent.
*674 Theresa Ramirez Bocetta, Executrix for the Estate of Jose Rizo Bernal, and Theresa Ramirez Bocetta, individually, Plaintiff-Appellant,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Avelino Lopez Aroca, Plaintiff-Appellant,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Jose Garcia Barba and Maria Luisa Castellano Linares, h/w, Plaintiffs-Appellants,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Guillermo Consuegra Garcia and Manuela Travieso Rodriguez, h/w, Plaintiffs-Appellants,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Maria Garcia, Administratrix Ad Prosequendum for the Estate of Manuel Santos Lucero, and, Maria Garcia, individually, Plaintiff-Appellant,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Joaquin Marquez Garcia and Amparo Ponce Izquierdo, h/w, Plaintiffs-Appellants,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Angela Esquerdo Luchuro, Executrix for the Estate of Jose Martin-Nino Barba, and Angela Esquerdo Luchuro, individually, Plaintiff-Appellant,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Juan Antonio Neva Blanco and Manuela Curtido Martin Arroyo, h/w, Plaintiffs-Appellants,
v.
Owens-Illinois, Inc., Defendant-Respondent.
Docket No. A-3332-06T3, A-4020-06T3, A-4021-06T3, A-4022-06T3, A-4023-06T3, A-4024-06T3, A-4025-06T3, A-4026-06T3, A-4027-06T3, A-4028-06T3, A-4029-06T3, A-4030-06T3, A-4031-06T3, A-4032-06T3, A-4033-06T3, A-4034-06T3
Superior Court of New Jersey, Appellate Division.
Argued April 28, 2008.
Decided May 27, 2008.
*677 Mitchell S. Cohen, Philadelphia, PA, argued the cause for appellants (Locks Law Firm, L.L.C., attorneys; Jennifer E. Troast and Mr. Cohen, on the briefs).
John C. Garde, Newark, argued the case for respondent (McCarter & English, L.L.P., attorneys; Mr. Garde and Debra M. Perry, of counsel and on the brief).
Before Judges PARRILLO, GILROY and BAXTER.
The opinion of the court was delivered by
PARRILLO, J.A.D.
At issue in this consolidated appeal is whether plaintiffs' actions should be dismissed on forum non conveniens grounds. Plaintiffs are fifteen lifelong Spanish nationals and residents, each of whom brought suit in New Jersey asserting product liability and breach of warranty claims arising from injuries allegedly suffered by exposure to asbestos while working aboard United States naval warships docked at either the jointly owned U.S.-Spanish military installation in Rota, Spain, or neighboring private shipyards in Cadiz. Defendant, Owens-Illinois, Inc. (O-I), whom plaintiffs claim manufactured and sold the asbestos products in New Jersey, successfully moved for dismissal on *678 the basis that Spain was the more appropriate forum in which to resolve the litigation. We disagree based on the record presented and therefore reverse.
We describe plaintiffs' version of the facts as alleged in their complaints, intimating of course no view as to the accuracy thereof. O-I is currently a Delaware corporation with headquarters in Toledo, Ohio. It is the successor by merger to Owens-Illinois, Inc., an Ohio corporation, which was formerly known as Owens-Illinois Glass Company. O-I began manufacturing and distributing a limited line of asbestos products under the name of Kaylo in 1943, and later Kaylo-20. Manufactured primarily in the form of heat insulating block and pipe covering, both Kaylo and Kaylo-20 were developed, designed, tested and marketed exclusively from defendant's two plants in New Jersey, first in Berlin, then in 1948 in Sayreville. By 1948-1949, Kaylo was being large-scale manufactured out of the Berlin plant while a new line of Kaylo products was in development. In 1955, the Kaylo-20 product line was ready for manufacturing, to be used for power, refining and chemical industries where high-temperature insulation was needed. On April 30, 1958, O-I sold its entire Kaylo thermal insulation business to Owens-Corning Fiberglass Corporation, and has not manufactured asbestos-containing products since.
Plaintiffs are skilled tradesmen who worked alongside other tradespersons common to large military installations, while servicing American naval warships in Spain at various times from 1950 to 1998. In this capacity, they were either employed by private contractors or directly by the U.S. Department of the Navy. They claim that as a result of the routine performance of their workplace maintenance operations duties, they came into contact, directly and indirectly, with asbestos dust and fibers emitted from the Kaylo products onboard these ships, and consequently, suffer from asbestos-related illnesses, including asbestosis. The naval vessels on which they worked were docked at the Rota Naval Base in Rota, Spain and before its construction, across the bay at the port city of Cadiz.
Construction of the Rota Naval Base was completed in 1958 and was a collaborative effort between the United States and Spanish governments. By "Agreement of Defense Cooperation Between the USA and the Kingdom of Spain" (Agreement), dated December 1, 1988, Spain, while retaining sovereignty over its territory and airspace, granted the United States use thereof as well as of operational and support installations such as the Rota Naval Base for military purposes. See Agreement, Article 2, § 2; Article 8; Article 24. The first major U.S. warship to dock at Rota arrived on July 30, 1959, preceded by a U.S. Coast Guard vessel in August 1958. While the Rota Naval Base was under construction, American warships were being repaired, maintained and refurbished at private shipyards in and around the port city of Cadiz, where plaintiffs claim they performed identical maintenance operations as at Rota that led to the same asbestos exposure that occurred later at the base.
In late 2004, plaintiffs filed the instant action against defendant in the Law Division, Camden County, sounding in strict liability and breach of warranty, and alleging personal injury from exposure to asbestos-containing products. After some discovery was conducted, in August 2006, defendant moved for dismissal of the complaints on forum non conveniens grounds, urging that Spain, the situs of the alleged exposure and residence of plaintiffs, was the more appropriate forum.
*679 At the close of oral argument, the motion judge reserved decision, requested supplemental briefing on the jurisdictional issue and commented: "[t]he only thing that bothers me is whether or not there's a forum that will hear these cases, because if there is, I'm sending them back to Spain." In response, both sides submitted conflicting legal opinions on the question of Spain's jurisdiction, with plaintiffs' expert positing that American naval warships docked at the port of a foreign nation remain United States territory. The motion judge, however, opted for the contrary view expressed by defendant's expert and accordingly held, without further analysis or reconciliation of the contrasting views, that Spanish courts have jurisdiction over plaintiffs' causes of action. As such, the judge went on to consider the private- and public-interest factors promulgated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and concluded, once again without elaboration or explanation, that all of the former and most of the latter weighed in favor of ceding jurisdiction to Spain. Consequently, the judge dismissed plaintiffs' complaints with prejudice.
On appeal, plaintiffs maintain the court erred as a matter of law in finding Spain an available, alternative forum and in its balancing of the public- and private-interest factors. We agree and conclude that the determination to dismiss plaintiffs' actions in favor of a foreign jurisdiction was a clearly mistaken exercise of the court's discretion.
The essence of the common law doctrine of forum non conveniens is that a court may dismiss a case when the forum selected by a plaintiff  despite the existence of jurisdiction and venue  is so inconvenient that it would be unfair to the defendant to conduct its defense of the claim in that location. Gulf Oil, supra, 330 U.S. at 507, 67 S.Ct. at 842, 91 L.Ed. at 1062. The doctrine affords an equitable remedy, D'Agostino v. Johnson & Johnson, Inc. (D'Agostino I), 225 N.J.Super. 250, 258, 542 A.2d 44 (1988), aff'd, 115 N.J. 491, 559 A.2d 420 (1989) (D'Agostino II), firmly embedded in our jurisprudence, but not of constitutional origin. Kurzke v. Nissan Motor Corp. in U.S.A., 164 N.J. 159, 165, 752 A.2d 708 (2000). Although "the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient[;]" Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256, 102 S.Ct. 252, 266, 70 L.Ed.2d 419, 436 (1981), reh'g denied, 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982), application of the doctrine does not involve simply a weighing of the relative conveniences of the parties, lest such motions become routine and ordinary. Kurzke, supra, 164 N.J. at 170, 752 A.2d 708; Starr v. Berry, 25 N.J. 573, 584, 138 A.2d 44 (1958); D'Agostino I, supra, 225 N.J.Super. at 262, 542 A.2d 44; Radigan v. Innisbrook Resort & Golf Club, 150 N.J.Super. 427, 431, 375 A.2d 1229 (App. Div.1977). As a defensive measure to protect the private interests of litigants, the doctrine should not be invoked offensively to embarrass or destroy a plaintiff's opportunity to be heard, or in situations where the prospect of a lengthy or complex trial offers a strong temptation to decline to entertain the suit. D'Agostino I, supra, 225 N.J.Super. at 261-62, 542 A.2d 44. Rather, application of the doctrine must be considered in light of the primary danger against which it guards, namely "`resort to a strategy of forcing the trial at a most inconvenient place' . . . [in order to] `vex,' `harass' or `oppress'" the adversary. Lony v. E.I. DuPont de Nemours & Co., 935 F.2d 604, 615 (3d Cir.1991) (quoting Gulf Oil, supra, 330 U.S. at 507-08, 67 S.Ct. at 842-43, 91 L.Ed. at 1062).
*680 Like all other equitable remedies, the application of the forum non conveniens doctrine is ordinarily left to the sound discretion of the trial court. Kurzke, supra, 164 N.J. at 165, 752 A.2d 708 (citing Civic S. Factors Corp. v. Bonat, 65 N.J. 329, 333, 322 A.2d 436 (1974)); see also Mastondrea v. Occidental Hotels Mgmt. S.A., 391 N.J.Super. 261, 278, 918 A.2d 27 (App.Div.2007). However, consistent with the purpose underlying the doctrine, a court may exercise its discretion to dismiss a case "only when trial of the action would `establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to a plaintiff's convenience' or when the `chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" Lony, supra, 935 F.2d at 608 (alterations in original) (quoting Piper, supra, 454 U.S. at 241, 102 S.Ct. at 258, 70 L.Ed.2d at 426; Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067, 1074 (1947)).
To guide the exercise of this discretion, courts generally apply a three step process. At the outset, a court determines whether there is an adequate alternative forum to adjudicate the parties' dispute. If another forum exists, the court then considers the degree of deference properly accorded the plaintiff's choice of forum. Finally, the court analyzes the private- and public-interest factors implicated in the choice of forum. See D'Agostino I, supra, 225 N.J.Super. at 261-63, 542 A.2d 44; see also Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2nd Cir.2005), cert. denied, 547 U.S. 1175, 126 S.Ct. 2320, 164 L.Ed.2d 860 (2006). Defendant, of course, bears the burden of persuasion on all elements of the analysis, and this burden is a heavy one. Camden Iron & Metal, Inc. v. Klehr, Harrison, Harvey, Branzberg & Ellers, L.L.P., 384 N.J.Super. 172, 180, 894 A.2d 94 (App.Div.), certif. denied, 187 N.J. 83, 899 A.2d 305 (2006); see also Lony, supra, 935 F.2d at 608-09; Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43-44 (3d Cir.1988). Dismissal is unwarranted unless the plaintiff's choice is shown to be demonstrably inappropriate, designed to subject the adversary to harassment, vexation, or clear hardship. D'Agostino I, supra, 225 N.J.Super. at 262, 542 A.2d 44; see also Camden Iron & Metal, supra, 384 N.J.Super. at 180, 894 A.2d 94; Madan-Russo v. Grupo Posada, S.A. de C.V., 366 N.J.Super. 420, 427, 841 A.2d 489 (App.Div.), certif. denied, 180 N.J. 448, 852 A.2d 187 (2004).

(i)
We thus begin our analysis considering whether defendant has demonstrated the availability of an adequate alternative forum where trial will best serve the ends of justice  a necessary predicate to application of the forum non conveniens doctrine. D'Agostino I, supra, 225 N.J.Super. at 259, 542 A.2d 44. Essentially, there must be at least two forums in which defendant is amenable to process. Ibid.; see also Mandell v. Bell Atl. Nynex Mobile, 315 N.J.Super. 273, 280-81, 717 A.2d 1002 (Law Div.1997) (stating "if there is jurisdiction but there is no alternative forum, then the mere inconvenience to any party . . . become[s] irrelevant; for the litigation cannot be dismissed on forum non conveniens grounds if to do so would be to leave plaintiff with no available forum.") If the defendant fails to carry this burden, the forum non conveniens motion must be denied. Norex Petroleum, supra, 416 F.3d at 157.
"An alternative forum is adequate if the defendant[][is] amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *681 Ibid. Here, in urging Spain as an adequate alternative forum, defendant represents, as to the first prong of the test, that it would submit to the jurisdiction of Spanish courts in any comparable action filed against it by plaintiffs. We view this proffer as insufficient for two reasons. First, in this context, we are not convinced that the question of availability should be made to depend merely upon the will or grace of a defendant, but rather should be provided by law. In any event, defendant's promise to accept service of process was never made a condition of the court's dismissal order. Nor did defendant ever stipulate that it would not interpose any defense based on plaintiffs' failure to file their complaints in a timely fashion, or that it would make available documents, witnesses or other evidence under its control or in its possession. Simply put, defendant's mere agreement to submit to jurisdiction there without at least its memorialization in a conditional dismissal order is insufficient to find Spain an adequate forum.
But even if defendant's consent should satisfy the first prong, we are equally unconvinced that such consent suffices to vest jurisdiction in the Spanish courts. On this score, plaintiffs maintain that their injuries occurred as a result of exposure to asbestos aboard United States military warships; that such vessels even when docked at foreign ports remain American soil, United States v. Collins, 7 M.J. 188, 189 (1979); 44B Am.Jur.2d Int'l Law § 87 (2007); and that Spanish courts are thereby divested of jurisdiction because the exposure and injury did not occur on Spanish territory. See Art. 10.9 of the Spanish Civil Code (C.C.); Art. 22.3 of the Organic Law on the Judiciary (L.O.P.J. 1985).[1]
Defendant offers no direct authority to the contrary and posits only that the American naval warships were technically within Spanish territorial waters at the time exposure occurred, over which Spain clearly has jurisdiction. We respond simply that plaintiffs' complaints alleged exposure only onboard American warships and not elsewhere in port or in the shipyards.
Defendant also posits that under the law of the flag[2] merchant vessels of one country that enter the port of another country to do business subject themselves to the law of the place they enter, unless there is a contradictory treaty. 44B Am.Jur.2d Int'l Law § 86 (2007) (footnote omitted); see Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 130, 125 S.Ct. 2169, 2177, 162 L.Ed.2d 97, 108 (2005).[3] We find this argument unavailing as well. Defendant cites to no authority challenging the proposition that armed vessels are exempt *682 from the jurisdiction and control of the local sovereign. Rather, the cases relied upon by defendant are all distinguishable, involving civilian ships, not military vessels; choice of law questions, not forum non conveniens; and contractual liability, not tort. Lemonis v. Prudential-Grace Lines, Inc., 81 Misc.2d 614, 366 N.Y.S.2d 541, 542-43 (1975); Spencer v. Alcoa S.S. Co., 221 F.Supp. 343, 343-44, 346 (E.D.N.Y.), aff'd, 324 F.2d 957 (2d Cir. 1963).
Lastly, defendant relies on Spain's "catch-all" jurisdictional provision, which provides for jurisdiction over any case brought by a resident plaintiff so long as a foreign defendant is amenable to service of process in that country and answers any complaint filed. Art. 54 of the Spanish Law on Civil Proceedings (L.E.Civ.). Essentially, defendant argues that Spanish courts have jurisdiction because defendant has agreed to submit to such. We have already dealt with this assertion in our analysis of the first prong of the "availability" test. Suffice it to say, the result remains unchanged on this second prong. We deem defendant's bare assertion here falls far short of sustaining its heavy burden of proving present availability of an adequate alternative forum.

(ii)
However, even assuming Spain to be an adequate alternative forum, the motion judge here failed to give adequate, if any, consideration to the amount of deference due plaintiff's choice of forum. See D'Agostino I, supra, 225 N.J.Super. at 262, 542 A.2d 44. In this regard, "[w]hen a plaintiff brings an action in a court with jurisdiction, such as here, `[his or her] choice of forum should rarely be disturbed.'" Lony, supra, 935 F.2d at 608 (quoting Piper, supra, 454 U.S. at 241, 102 S.Ct. at 258, 70 L.Ed.2d at 426). Of course, the greatest deference is afforded a plaintiff's choice of its home forum. D'Agostino I, supra, 225 N.J.Super. at 262, 542 A.2d 44 (citing Piper, supra, 454 U.S. at 256 n. 24, 102 S.Ct. at 266 n. 24, 70 L.Ed.2d at 436 n. 24). While a foreign plaintiff's choice of a United States forum may deserve somewhat less deference, nevertheless that reduced deference "is not an invitation to accord a foreign plaintiff's selection of an American forum no deference since dismissal for forum non conveniens is the exception rather than the rule." Lony, supra, 935 F.2d at 609 (citation and internal quotations omitted). Indeed,
domestic residence is not decisive. The doctrine of forum non conveniens "is non-discriminatory and does not turn on considerations of domestic residence or citizenship. . . ." Gore v. United States Steel Corp., [15 N.J. 301, 311, 104 A.2d 670 (1954), cert. denied, 348 U.S. 861 75 S.Ct. 84, 99 L.Ed. 678 (1954)]. Instead, "[i]t is only in those exceptional cases where a weighing of all of the many relevant factors, of which residence is but part, decisively establishes that there is available another forum where trial will best serve the convenience of the parties and the ends of justice, that the doctrine is ever invoked." Ibid.

[D'Agostino I, supra, 225 N.J.Super. at 262-63, 542 A.2d 44 (emphasis added).]
As noted, defendant retains the heavy burden of overcoming the presumption that plaintiff's choice should govern. Here, in dismissing plaintiffs' complaints on forum non conveniens grounds, the motion judge not only underestimated the amount of deference due plaintiffs' choice, but failed to accord that choice any deference at all. This essential failure led to a skewed analysis of the private- and public-interest factors that we will discuss shortly, and ultimately to a mistaken exercise *683 of the court's discretion in granting dismissal.

(iii)
To facilitate the exercise of discretion in resolving a forum non conveniens motion, the Supreme Court in Gulf Oil, supra, enumerated a list of private-and public-interest factors since recognized by our Court as relevant in determining whether a plaintiff's forum choice is appropriate. The private-interest factors are:
(1) the relative ease of access to sources of proof, (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses, (3) whether a view of the premises is appropriate to the action and (4) all other practical problems that make trial of a case "easy, expeditious and inexpensive," including the enforceability of the ultimate judgment.
[D'Agostino I, supra, 225 N.J.Super. at 263, 542 A.2d 44 (citing and quoting Gulf Oil, supra, 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062).]
The public-interest factors are:
(1) the administrative difficulties which follow from having litigation "pile up in congested centers" rather than being handled at its origin, (2) the imposition of jury duty on members of a community having no relation to the litigation, (3) the local interest in the subject matter such that affected members of the community may wish to view the trial and (4) the local interest "in having localized controversies decided at home."
[Ibid. (citing and quoting Gulf Oil, supra, 330 U.S. at 508-09, 67 S.Ct. at 843, 91 L.Ed. at 1062-63).]
Analysis of the issue is qualitative, not quantative, and a plaintiffs' choice of forum "`may not be defeated upon a mere balance of conveniences.'" Kurzke, supra, 164 N.J. at 170, 752 A.2d 708 (quoting D'Agostino I, supra, 225 N.J.Super. at 262, 542 A.2d 44). On the contrary, "the burden is on defendant[] to demonstrate the inappropriateness of plaintiffs' chosen forum[,]" Camden Iron & Metal, supra, 384 N.J.Super. at 180, 894 A.2d 94, and that it was "designed to subject defendant to harassment and vexation." Ibid. (citation and internal quotes omitted). In light of the deference owing plaintiffs' choice, defendant "`must show that . . . the private and public interest factors weigh heavily on the side of dismissal.'" Lony, supra, 935 F.2d at 609 (emphasis added) (alteration in original) (quoting Lacey, supra, 862 F.2d at 44). If the factors are in equipoise, jurisdiction should be retained.
Preliminarily, we note that the motion judge did not ascribe any ill or discordant motives to plaintiffs' choice of a New Jersey forum. We, of course, recognize that the possibility of a strict liability award might have made the choice of a New Jersey forum attractive to plaintiffs regardless of convenience, but this is no reason to defeat their cause of action here. While there may be little reason to assume that New Jersey is convenient for plaintiffs, there is more reason to doubt the convenience to defendant of defendant's preferred forum more than 3000 miles away from its own home. Thus, plaintiffs' decision to litigate in New Jersey, which was home to defendant's Kaylo Division for years and where defendant is amenable to suit, may properly be viewed as a strong indicator that convenience, and not tactical harassment of an adversary, informed the decision to sue outside plaintiffs' home forum.
Indeed, geographic convenience for Ohio-based O-I weighs in favor of plaintiffs' forum choice. Obviously, some witnesses and evidence will be more easily accessible to all parties in New Jersey than in Spain. This is especially true for *684 defendant since liability and causation will presumably be hotly contested, and key corporate evidence and witnesses relating to the development, testing, marketing and sale of Kaylo to the U.S. government or military are more likely available in this country. On the other hand, defendant has failed to demonstrate that a critical number of crucial witnesses or records pertaining to damages would be unavailable in New Jersey. Rather, defendant's mere speculation about potential inadequacies and burdens is not a sufficient basis to deny plaintiffs' choice of forum. Kurzke, supra, 164 N.J. at 166-67, 752 A.2d 708.
We find no support in the record for the summary conclusion of the motion judge that access to sources of proof, the availability of compulsory process for the attendance of unwilling witnesses, and the cost, speed and expense of trial all weigh in favor of Spain. Indeed, the record is barren of any proof that trial would be reached more expeditiously in Spain. Equally absent is any comparative quantification of discovery costs, expenses of trial, witness availability, document access, or the like that suggests Spain to be the more appropriate forum. If anything, it would appear that important evidence relevant to claims and defenses is located in each jurisdiction, and there is no reason to believe that the costs and burdens of litigating here favor plaintiffs to the detriment of defendant. And to the extent defendant suffers any burden at all, it seems equally shared by plaintiffs, and, in any event, may very well be mitigated by modern means of discovery such as videotaped testimony, telephonic conferencing and de bene esse depositions, designed to facilitate the gathering of evidence, Mastondrea, supra, 391 N.J.Super. at 280, 918 A.2d 27; Madan-Russo, supra, 366 N.J.Super. at 428-29, 841 A.2d 489; see also Lehman v. Humphrey Cayman, Ltd., 713 F.2d 339, 343 (8th Cir.1983), cert. denied, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984), and by external sources, such as the "Hague Convention procedures, [which] assure that some evidence from each forum will be available in the other." Lony, supra, 935 F.2d at 609 (citing Société Nationale Industrielle Aérospatiale v. United States District Court, 482 U.S. 522, 541, 107 S.Ct. 2542, 2554, 96 L.Ed.2d 461, 482 (1987) (noting Hague Convention procedures "are available whenever they will facilitate the gathering of evidence" by authorized means.))
Consequently, we perceive no significant advantage to the parties to a Spanish forum, assuming its availability, over an American one. "When an alternative forum would present as many obstacles as does the forum chosen by the plaintiffs, which appears to be true in this case, a dismissal should not be granted." Kurzke, supra, 164 N.J. at 171, 752 A.2d 708 (citing D'Agostino II, supra, 115 N.J. at 494, 559 A.2d 420). Thus, even if plaintiffs, as foreign nationals, are not entitled to the same high deference in their New Jersey choice as a resident plaintiff, the totality of private-interest factors  many of which are neutral  nevertheless suggests that their choice warrants substantial deference and, so measured, is not an inappropriate one.
We reach the same result in our analysis of the public-interest factors. Here again, in favoring Spain, the motion judge simply cited as overriding considerations his conclusion that local jurors have no relation to this litigation and Spanish courts would be better able to interpret their own laws and protect their citizens. We conclude otherwise.
In the first place, the potential application of Spanish law does not weigh in favor of dismissing plaintiffs' complaints in New Jersey. See Mastondrea, supra, 391 *685 N.J.Super. at 282, 918 A.2d 27; Madan-Russo, supra, 366 N.J.Super. at 430, 841 A.2d 489; see also Lehman, supra, 713 F.2d at 345. Our judges "are perfectly capable of determining any choice of law issues presented and applying foreign law if required." Madan-Russo, supra, 366 N.J.Super. at 430, 841, A.2d 489.
Second, we disagree that local jurors have no relation to this litigation. With regard to the Gulf Oil public-interest factors, the Court in D'Agostino II, supra, stated:
the focus of these public-interest factors is on the existence of a factual nexus between the issues in the litigation and the forum selected by the plaintiff. Ordinarily, the type of factual nexus that would induce a court to retain jurisdiction would be manifested by a significant relationship between the issues in the case and the jurisdiction whose court was designated as the place for trial. There is no suggestion that the nexus must be such that the substantive law of the forum state supports the relief sought by the plaintiff.
[115 N.J. at 495, 559 A.2d 420.]
Clearly, plaintiffs' claim that defendant's tortious conduct in New Jersey  the manufacture, marketing and sale of asbestos-containing products that caused them serious injury upon exposure  provides a sufficient factual nexus with the State to warrant retention of jurisdiction here. See, e.g., D'Agostino II, supra, 115 N.J. at 497, 559 A.2d 420; see also Kurzke, supra, 164 N.J. at 169-71, 752 A.2d 708. Indeed, New Jersey has an undeniable, strong interest in assuring the safety of products manufactured, distributed, marketed and sold here, and correspondingly in providing a forum for redress of allegedly wrongful conduct of its corporate residents. Thus, as the court noted in another product liability case sought to be transferred to a foreign jurisdiction, "it is appropriate to involve the State's judiciary, including the imposition of jury duty on New Jersey citizens, for the purpose of resolving this litigation." Kurzke, supra, 164 N.J. at 169, 752 A.2d 708.

(iv)
In sum, we conclude that defendant has failed to carry its burden to demonstrate that Spain is an available adequate alternative forum to adjudicate the parties' dispute and therefore the motion to dismiss on forum non conveniens grounds should have been denied without consideration of public- and private-interest factors. But even assuming otherwise, we further conclude, upon an analysis of the totality of Gulf Oil factors, that defendant has also failed to satisfy its burden of proving New Jersey to be an inappropriate forum, or that plaintiffs' forum choice was designed to vex, harass or oppress defendant. The motion judge's contrary conclusion was borne of a failure to consider all the relevant factors and to accord plaintiffs' choice the deference due, and consequently resulted in a mistaken exercise of his discretion.
Reversed and remanded for further proceedings.
NOTES
[1] The relevant jurisdictional provision, Article 22.3 of the Organic Law on the Judiciary, establishes that, "[i]n civil affaries [sic], Spanish courts are competent . . . in matters of non-contract obligations, when the fact from which they derive occurred in Spanish territory."
[2] Article 10.2 in Chapter IV, "Norms of Private International Law," of the Spanish Civil Code provides that "[s]hips, airplanes, and means of transportation by rail, as well as all rights established thereon are subject to the law of the flag, enrollment or registry. . . ." (emphasis added).
[3] According to principles of comity, there is an exception to the general rule whereby "all matters of discipline and all things done onboard that affect only the vessel or those belonging to her, and do not involve the peace or dignity of the country or the tranquility of the port, should be left by the local government to be dealt with by the authorities of the nation to which the vessel belongs as the laws of that nation or the interests of its commerce require." 44B Am.Jur.2d Int'l Law § 86 (2007) (footnote omitted).